**AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANIES**

v.

**Thomas W. HEARN, Lynn A. Hearn, Brandon Thomas Hearn, Clayton Russell and Stacey Marshall.**

**Appeal of Clayton Russell and Stacey Marshall.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2014.

Filed June 9, 2014.

Keith M. McWhirk, Skippack, for appellant.

Steven N. Cherry, Philadelphia, for American Property and Casualty Companies, appellee.

John L. Lachall, West Chester, for Thomas Hearn, appellee.

BEFORE: FORD ELLIOTT, P.J.E., OTT and STRASSBURGER,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Clayton Russell and Stacey Marshall appeal the order of February 7, 2013, granting summary judgment in favor of American National Property and Casualty Companies. We affirm.

On the evening of September 15, 2006, Clayton Russell, Brandon Thomas Hearn, and a number of Clayton's friends were "hanging out" in Clayton's finished basement. Clayton was playing a game called "Dance, Dance Revolution." According to the complaint, this video game includes a floor pad which connects to the television. While playing songs, the "dancer" is given instructions as to where to step on the pad and scores points for speed and accuracy. While playing this game, Clayton was struck in the groin from behind by Brandon Hearn. Clayton felt immediate pain which intensified during the night. The following day, Clayton's mother, Stacey Marshall, took Clayton to the emergency room due to severe pain and swelling in Clayton's groin area. Clayton was diagnosed with torsion of the left testicle and underwent emergency surgery. Diagnostic tests revealed that Clayton may be permanently infertile as a result of having been struck in the groin.

The trial court has summarized the procedural history of this matter as follows:

In 2008, Clayton Russell and Stacey Marshall, Clayton Russell's mother, filed a civil complaint against Brandon Hearn seeking damages for negligence, battery, assault, negligent infliction of emotional distress, intentional infliction of emotional distress, infertility, loss of consortium, and, punitive damages ("the Underlying Complaint"). Clayton Russell raised all of the above-listed claims, with the exception of Stacey Marshall's loss of consortium claim, in the Underlying Complaint. Stacey Marshall also raised claims of negligent infliction of emotional distress, intentional infliction of emotional distress in her own right, and, joined in the punitive damage claim with her son. Clayton Russell and Stacey

---

* Retired Senior Judge assigned to the Superior Court.

Marshall are the "Underlying Plaintiffs" or "Plaintiffs."

In the present action, American National Property and Casualty Companies ("ANPAC") filed a declaratory judgment complaint ("the Declaratory Judgment Action") naming Thomas W. Hearn, Lynn A. Hearn, Brandon Thomas Hearn, Clayton Russell, and Stacey Marshall, as defendants. ANPAC issued a homeowner's policy to Thomas W. Hearn and Lynn A. Hearn that was in effect at the time of the events described in the Underlying Complaint ("the Policy"). Thomas W. Hearn and Lynn A. Hearn are the parents of Brandon Hearn ("the Insureds"). Brandon Hearn ("Hearn" or "Underlying Defendant Hearn"), is the defendant named in the Underlying Complaint. In this Declaratory Judgment Action, ANPAC averred that any damages claimed by Plaintiffs in the Underlying Complaint are based upon intentional acts and are therefore not covered under the Policy, as discussed in Part IV below.

Subsequently, ANPAC filed a motion for summary judgment in the Declaratory Judgment Action ("the Motion"). After reviewing the filings, including the Declaratory Judgment Action and all pleadings related thereto, the Motion, the answers in opposition to the Motion, the briefs of the parties, and having argument, the Court granted the Motion and found the Policy did not apply to the claims raised in the Underlying Complaint ("the Order"). Underlying Plaintiffs Clayton Russell and Stacey Marshall ("the Appellants" or "the Russell Appellant") filed a timely appeal of the Order ("the Appeal"). Neither Underlying Defendant Hearn, nor his parents, appealed the Order. The Court ordered the Appellants to file a concise statement in accordance with Pa.R.A.P. 1925(b) and they complied, filing a time-

ly concise statement shortly thereafter ("the Concise Statement"), as is set forth in Part III below.

Trial court opinion, 5/6/13 at 1–3 (footnotes omitted).

 Initially, we note:

Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa.Super.2005) (quotation omitted). "[Moreover,] we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Evans v. Sodexho*, 946 A.2d 733, 739 (Pa.Super.2008) (quotation omitted).

*Ford Motor Co. v. Buseman*, 954 A.2d 580, 582–583 (Pa.Super.2008), *appeal denied*, 601 Pa. 679, 970 A.2d 431 (2009).

 "The proper construction of a policy of insurance is resolved as a matter of law in a declaratory judgment action."

*Alexander v. CNA Insurance Co.,* 441 Pa.Super. 507, 657 A.2d 1282, 1284 (1995), *appeal denied,* 543 Pa. 689, 670 A.2d 139 (1995) (citation omitted). "The Declaratory Judgments Act may be invoked to interpret the obligations of the parties under an insurance contract, including the question of whether an insurer has a duty to defend and/or a duty to indemnify a party making a claim under the policy." *General Accident Ins. Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997) (citations omitted). Both the duty to defend and the duty to indemnify may be resolved in a declaratory judgment action. *Id.* at 707, 692 A.2d at 1096, citing *Harleysville Mutual Ins. Co. v. Madison,* 415 Pa.Super. 361, 609 A.2d 564 (1992) (insurer can seek determination of obligations to insured before conclusion of underlying action) (additional citations omitted).

> It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. In determining whether an insurer's duties are triggered, the factual allegations in the underlying complaint are taken as true and liberally construed in favor of the insured.

*Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 83 A.3d 418, 421 (Pa.Super.2013) (citation and quotation marks omitted).

> The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint. As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover.

*Erie Ins. Exchange v. Fidler,* 808 A.2d 587, 590 (Pa.Super.2002) (citations omitted).

[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint. *Mutual Benefit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999). If we were to allow the manner in which the complainant frames the request for damages to control the coverage question, we would permit insureds to circumvent exclusions that are clearly part of the policy of insurance. *See id.* (allowing the language of the complaint alone to control coverage questions would "encourage litigation through the use of artful pleadings designed to avoid exclusions"). The insured would receive coverage neither party intended and for which the insured was not charged. The fact that the [plaintiffs] couched their claims in terms of negligence does not control the question of coverage. *Id.; Acceptance Ins. Co. v. Seybert,* 757 A.2d 380 (Pa.Super.2000).

*Id.* "[W]e focus primarily on the duty to defend because it is broader than the duty to indemnify. If an insurer does not have a duty to defend, it does not have a duty to indemnify. However, both duties flow from a determination that the complaint triggers coverage." *Indalex, supra* (citations and quotation marks omitted).

■ The underlying facts are not in dispute. Hearn hit Clayton in the groin with his forearm while Clayton was dancing, causing serious injuries. As explained below, the policy specifically excludes coverage for bodily injury which is expected or intended by any insured even if the actual injury is different than expected or intended. ANPAC contends that, because Hearn's act of hitting Clayton in the groin was intentional conduct, the exclusion relieves ANPAC of any duty it otherwise has to insure, defend, and indemnify the in-

sureds in the underlying action. We agree.

The policy defines "occurrence" as follows:

"occurrence" when used in Section II of this policy, means an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage during the policy period.

Complaint in declaratory judgment, 4/8/10, Exhibit B, at the Policy page 2.

In terms of personal liability coverage, the policy provides,

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will: a. pay up to our limit of liability for the damages for which the insured is legally liable; and b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

*Id.* at 11–12.

The relevant exclusion states,

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage: a. which is expected or intended by any insured even if the actual injury or damage is different than expected or intended[.]

*Id.* at 12.

Instantly, the underlying complaint alleged, *inter alia*, that "[Hearn] came from under Clayton, hitting him in the groin with his forearm while Clayton's back was turned and while he was dancing and distracted by the video game." (Underlying Complaint, 9/10/08 at 4 ¶ 10.) Under Count 2, battery, the complaint alleged that, "[Hearn] intended to cause a harmful or offensive contact with Clayton's body by striking him in his groin area on his genitals and testicles." (*Id.* at 7 ¶ 32.) The underlying plaintiffs alleged that Hearn had specific intent to harm Clayton. (*Id.* at 9 ¶ 42.) The complaint characterized the incident as an "unprovoked attack." (*Id.* at 12 ¶ 64.)

Consistent with the allegations in the complaint, Hearn testified during his deposition that the act was intentional. According to Hearn, he snuck up behind Clayton and made a "ball tap motion," putting his hand forward as though he were going to strike Clayton in the testicles. (Notes of testimony, deposition of Brandon Hearn, 5/19/09 at 30–31.) Hearn then had second thoughts and hesitated, but his friend Greg nodded his head yes. (*Id.* at 32–33.) At that point, Hearn hit Clayton in the testicles with his forearm. (*Id.* at 33.) Hearn testified that, "in our little group, if you were doing something, like, kind of stupid, that's what you—you would get a ball tap." (*Id.*) Hearn considers Dance, Dance Revolution to be a "little kid's game." (*Id.* at 34.) Hearn testified that he visited Clayton in the hospital, "Because I felt really bad. I never meant to hurt him like that. I meant for him to be in pain for about five seconds. I never meant for him to go to the hospital. I felt extremely bad, and I was concerned." (*Id.* at 48–49.)

■ Hearn's act of hitting Clayton in the groin was clearly intentional. Hearn snuck up behind Clayton while his back was turned and hit him in the groin area with his forearm. Hearn testified that he only meant to cause Clayton momentary discomfort; however, the policy excludes coverage of bodily injuries resulting from intentional acts "even if the actual injury

or damage is different than expected or intended." Although the complaint includes counts sounding in negligence, the question of coverage is decided by the factual allegations in the complaint. Here, it is alleged that Hearn intentionally and maliciously struck Clayton in the groin. In fact, Hearn conceded as much during his deposition testimony. As such, there is no duty to defend or indemnify based on the policy exclusion for intentional acts resulting in bodily injury. *Fidler, supra* (no coverage where insured threw plaintiff against a wall and into a desk, and the policy specifically excluded coverage for bodily injury "expected or intended" by an insured); *Donegal Mutual Ins. Co. v. Ferrara,* 380 Pa.Super. 588, 552 A.2d 699 (1989) (no duty to defend/indemnify where the policy excluded from coverage any bodily injury or property damage expected or intended by the insured and the insured twice willfully and maliciously kicked the plaintiff in the groin area). As recognized by this court in *Fidler,* as a rule general liability policies do not cover intentional torts and/or criminal acts, and must be clearly and unambiguously written to provide such coverage. *Fidler,* 808 A.2d at 591 (citations omitted). Regardless of whether appellants chose to plead a negligence cause of action, it is clear from the undisputed facts that Hearn's assault on Clayton was intentional.

Appellants rely on *United Services Automobile Association v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982 (1986), which is readily distinguished. The exclusionary clause in that case applied to bodily injury or property damage "which is expected or intended by the insured." *Id.* at 985. This court held such clauses are susceptible to several reasonable interpretations; as such, they are ambiguous as a matter of law and must be construed against the insurer. *Id.* at 987. The *Elitzky* court held that the exclusionary clause applies

only when the insured intends to cause a harm of the same general type as that which did occur. *Id.* Insurance coverage is not excluded because the insured's actions were intentional unless he also intended the resultant damage. *Id.* In the case *sub judice,* however, the exclusionary clause also applies "even if the actual injury or damage is different than expected or intended." Therefore, it is broader than the exclusion at issue in *Elitzky* and applies regardless of whether Hearn intended the serious injuries which resulted from his actions. The trial court did not err in concluding that ANPAC had no duty to defend or indemnify the insureds.

In addition, as stated above, the policy defines "occurrence" as "an accident, including exposure to conditions, which results in ... bodily injury ... during the policy period." Hearn's intentionally striking Clayton in the testicles can hardly be described as an "accident." In *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 519 Pa. 306, 548 A.2d 246 (1988), the policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...." *Id.* at 309, 548 A.2d at 247. In *Gene's Restaurant,* a patron was beaten and thrown to the ground. *Id.* Nationwide refused to defend on the ground of non-coverage, and our supreme court affirmed, stating, "Under this definition an 'occurrence' is an accident. The willful and malicious assault alleged in the complaint is not an accident but rather is an intentional tort. As such, it is not covered by the policy and, therefore, the insurer owed no duty to defend." *Id.* at 309–310, 548 A.2d at 247 (footnote and citations omitted). Similarly, here, the allegations in the complaint describe the intentional torts of as-

sault and battery and are excluded from coverage.

■■■■ Appellants also complain that the reservation of rights letters sent by ANPAC to its insureds were deficient. Appellants are not the insureds and they lack standing to raise this contractual issue. As noted above, the insureds, the Hearns, have not appealed the order granting summary judgment in favor of ANPAC. "A reservation of rights is unilateral, written notice from the insurer to the policyholder that the insurer may disclaim coverage for one or more claims in issue based on terms of the insurance policy, legal principles precluding coverage, violation of policy provisions by the insured, or some combination of these factors." *Whole Enchilada, Inc. v. Travelers Property Cas. Co. of America,* 581 F.Supp.2d 677, 686 n. 6 (W.D.Pa.2008), quoting Norton on Insurance Coverage in Pennsylvania 2d Ed. § 1C(1). Furthermore, even if appellants had standing to raise this issue, the reservation of rights letters were not deficient and put the insureds on notice that a policy exclusion might apply.

> Pennsylvania counterbalances the insurer's broad obligation to defend even claims as to which coverage may not apply by providing the insurer the option of defending subject to a reservation of its right later or simultaneously to contest coverage:
>
>> Where the insurer assumes the duty to defend, the insurer can simultaneously challenge whether the claim is covered under the insurance policy, even if the underlying case settles. An insurer's defense of the insured, therefore, does not waive the insurer's claims that a policy exclusion applies. It is common practice for insureds and insurance companies to file declaratory judgment actions when there is a

dispute regarding whether the insurer has a duty to defend and/or indemnify . . . .

*Step Plan Servs., Inc., v. Koresko,* 12 A.3d 401, 419 (Pa.Super.2010) (internal quotation marks and citations omitted). Thus, in *Brugnoli v. United National Insurance Co.,* we held:

> [A] liability insurer will not be estopped to set up the defense that the insured's loss was not covered by the insurance policy, notwithstanding the insurer's participation in the defense of an action against the insured, if the insurer gives timely notice to the insured that it has not waived the benefit of its defense under the policy.

284 Pa.Super. 511, 426 A.2d 164, 167 (1981) (quoting 14 G. Couch, Cyclopedia of Insurance Law § 51:83 (2d ed. 1965)); accord *Nichols v. Amer. Cas. Co. of Reading, Penna.,* 423 Pa. 480, 225 A.2d 80, 81–82 (1966); *Step Plan,* 12 A.3d at 419.

*Babcock & Wilcox Co. v. American Nuclear Insurers,* 76 A.3d 1, 12 (Pa.Super.2013), *appeal granted in part,* —— Pa. ——, 84 A.3d 699 (2014).

On August 2, 2007, ANPAC sent its insureds a letter referencing the September 15, 2006 incident, and stating that, "There appear to be reasons why the insurance company might not have an obligation to you with respect to such incident." The letter specifically stated that coverage might not exist because of "expected or intended acts" and set forth the relevant exclusionary clause in Section II of the policy. (ANPAC's motion for summary judgment, 11/10/11 Exhibit E.)

On September 3, 2009, ANPAC sent a similar letter, again referencing the exclusionary clause and informing its insureds that, "The policy does not provide indemnity for intentional conduct, injury other

than bodily injury or for punitive or exemplary damages." (*Id.*) Therefore, we disagree that ANPAC's reservation of rights letters were vague, ambiguous, and failed to adequately advise the insureds. ANPAC is not estopped from disclaiming coverage.

For these reasons, we determine that the trial court's entry of summary judgment in favor of ANPAC was not in error. Accordingly, we affirm.

Order affirmed.