J-A07042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIE INSURANCE EXCHANGE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| COSTA CONSTRUCTION, LLC; RONALD J. SARBER AND LISA R. SARBER, HUSBAND AND WIFE; JEFF SORICK HEATING & COOLING,INC.; PENNSYLVANIA SOIL & ROCK, INC.; DANIEL F. MACKULIN T/D/B/A DANIEL F. MACKULIN, GENERAL CONTRACTOR; FORREST STEEL CORPORATION; PATRICK MASONRY, INC.; CARMEN BARONE & SONS, INC.; TIMOTHY HANNO T/D/B/A CREATIVE CADD CONCEPTS; ROBERT K. STAVER T/D/B/A ROBERT STAVER ENGINEERING; AND ELIZABETH EQUIPMENT SERVICES, INC. | |
| APPEAL OF: COSTA CONSTRUCTION, LLC | |
| Appellant | No. 1516 WDA 2014 |

Appeal from the Order August 20, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD13-005171

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.: **FILED MAY 8, 2015**

Appellant, Costa Construction, LLC, appeals from the August 20, 2014

order, which granted the motion for judgment on the pleadings filed by

Appellee, Erie Insurance Exchange (Erie). After careful review, we affirm.

We recount the relevant factual and procedural history of this case as follows. On December 30, 2002, Ronald J. Sarber and Lisa R. Sarber (the Sarbers) contracted with Appellant for the construction of a single-family residence. Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at Exhibit A (Sarbers' Amended Complaint), at ¶ 6.[1] Following Appellant's completion of the residence, the Sarbers moved in with their minor child. *Id.* at Exhibit A, at ¶ 8. The Sarbers noticed defects in their home including, *inter alia*, cracking in drywall, doors not closing properly, and uneven flooring. *Id.* at Exhibit A, at ¶¶ 9-10. The Sarbers filed a lawsuit against Appellant at docket number GD-11-015426 on August 8, 2011.

Erie insured Appellant under policy number Q48-0750425.[2] *Id.* at ¶ 29; *Id.* at Exhibit C (Commercial General Liability Form (hereinafter Insurance Policy)). On March 21, 2013, Erie filed a complaint for declaratory judgment against Appellant and several other entities at docket number GD-

_____

[1] For the purpose of resolving the appeal before this Court, we accept the allegations in the underlying complaint filed by the Sarbers. However, our review is limited to examining those allegations and Erie's responsibility to Appellant in light thereof. **See  Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa**, 83 A.3d 418, 421 (Pa. Super. 2013), *appeal denied*, 99 A.3d 926 (Pa. 2014). Accordingly, we make no judgment as to the merits of the underlying lawsuit or the truth of the allegations on which the Sarbers' lawsuit is based.

[2] The insurance policy became effective on December 7, 2004 and was renewed annually through December 7, 2010. Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at ¶ 29.

13-005171.[3]  Thereafter, on April 11, 2013, the Sarbers filed a second amended complaint in the underlying action against Appellant, which incorporated the allegations set forth in their amended complaint. As a result, Erie filed an amended complaint, in its declaratory judgment lawsuit subject to this appeal, on June 3, 2013, setting forth the additional allegations the Sarbers averred against Appellant. *Id.* at ¶¶ 20-28. In the amended complaint, Erie asserted that the claims set forth against Appellant by the Sarbers are not covered by the insurance contract between Erie and Appellant. *Id.* at ¶¶ 24-38. Therefore, Erie sought an order from the trial court declaring that Erie does not have a duty to defend Appellant in the Sarbers' lawsuit and that Erie does not have a duty to indemnify Appellant for any loss incurred by Appellant, resulting from said lawsuit. *Id.* at 15. On February 7, 2014, Appellant filed its answer and new matter to Erie's amended complaint. Therein, Appellant requested that the trial court dismiss Erie's amended complaint for declaratory judgment with prejudice.

---

[3] The Sarbers filed the underlying lawsuit naming Appellant and several other parties related to the construction of their home as defendants. Erie filed the subsequent lawsuit for declaratory judgment, from which this appeal stems, naming the Sarbers and all defendants in the underlying lawsuit as defendants. While the other defendants named in the instant action filed responses to Erie's pleadings and motion in the trial court, Appellant and Erie are the only parties participating in the instant appeal. Therefore, we discuss only the filings below germane to the instant appeal and its participants.

Appellant's Answer and New Matter, 2/7/14, at 6-7 (unnumbered). Erie filed its response to Appellant's new matter on February 25, 2014.

On June 16, 2014, Erie filed a motion for judgment on the pleadings. The trial court scheduled argument on Erie's motion for August 20, 2014. Appellant filed a brief in opposition to the motion on August 13, 2014. On August 20, 2014, the trial court granted Erie's motion for judgment on the pleadings, finding that Erie does not have a duty to defend Appellant or indemnify Appellant in connection with the lawsuit filed by the Sarbers. Trial Court Order, 8/20/14. On September 10, 2014, Appellant timely appealed.[4]

On appeal, Appellant raises the following issue for our review.

> Under Pennsylvania law and jurisprudence construing liability insurance contracts, did the [t]rial [c]ourt error [sic] by granting [j]udgment on the [p]leadings for Erie [] declaratory judgment action that sought to terminate a duty to indemnify and defend its insured builder, [Appellant], in an underlying workmanship action if the underlying complaint lawsuit contains alternative allegations that the damages to the home may have been independently caused, in whole or in part, by the acts of additional defendant subcontractors acting in rogue or by mine subsidence?

When considering the grant of a motion for judgment on the pleadings, we adhere to the following standard of review.

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034,

---

[4] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there is no disputed issues of fact[,] and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Sw. Energy Prod. Co. v. Forest Res., LLC.*, 83 A.3d 177, 185 (Pa. Super. 2013) (citation omitted), *appeal denied*, 96 A.3d 1029 (Pa. 2014).

Appellant argues that the trial court erred in granting Erie's motion for judgment on the pleadings because facts could be developed that show that the damage complained of was caused by "an insurable and non-excludable 'occurrence.'" Appellant's Brief at 9. In its motion for judgment on the pleadings, Erie contended it has no duty to insure or indemnify Appellant because the claims against Appellant, alleging faulty workmanship, faulty repair, and damage to the residence, are not covered under the insurance

policy. Motion for Judgment on the Pleadings, 6/16/14, at ¶¶ 1-4. The trial court agreed with Erie and found that the allegations in the Sarbers' lawsuit against Appellant do not constitute an "occurrence," thus Erie has no duty to defend or indemnify Appellant under the insurance policy. Trial Court Opinion, 8/20/14, at 1-2. For the following reasons, we agree.

We first note that "[t]he proper construction of a policy of insurance is resolved as a matter of law in a declaratory judgment action." *Erie Ins. Exch. v. Lobenthal*, --- A.3d ---, 2015 WL 1668183, *3 (Pa. Super. 2015). The interpretation of an insurance policy is reviewed *de novo*, as it is a question of law. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). "When interpreting an insurance policy, we first look to the terms of the policy." *Indalex*, *supra*. When the policy language is clear and free of ambiguity, "we must give effect to that language." *Id.* (citation omitted). Further, "[i]t is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." *Id.* at 421, *quoting* *Kvaerner*, *supra* at 896. In ascertaining whether an insurer's duties are triggered under a policy, the allegations in the underlying complaint are accepted as true and are construed in favor of the insured. *Id.* Moreover, "[i]f an insurer does not have a duty to defend, it does not have a duty to indemnify." *Id.* (citation omitted). "The obligation of an insurer to defend an action against the insured is fixed solely by the

allegations in the underlying complaint." ***Am. Nat'l Prop. and Cas. Cos. v.***

***Hearn***, 93 A.3d 880, 884 (Pa. Super. 2014) (citation omitted). "As long as

a complaint alleges an injury which may be within the scope of the policy,

the insurer must defend its insured until the claim is confined to a recovery

the policy does not cover." ***Id.*** (citation omitted). Therefore, we proceed

to examine the terms of the policy to determine whether the allegations, as

asserted by the Sarbers in the underlying complaint, trigger Erie's duty to

defend Appellant.

The insurance policy provides that Erie will have the duty to defend

Appellant in any "suit" seeking damages because of "bodily injury" or

"property damage" to which the policy applies. Erie's Amended Complaint

for Declaratory Judgment, 6/3/13, at Exhibit C (Insurance Policy), at 1.

Further, the insurance policy applies to cover such damages only if the

damages are the result of an "occurrence." ***Id.*** at Exhibit C, at 1 The policy

defines "occurrence" as "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions."[5] ***Id.*** at

---

[5] An amendment to the definition of "occurrence" applies to the December 7, 2009- December 7, 2010 policy period only. Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at ¶ 33. It provides that work performed on behalf of the insured may constitute an "occurrence" if other criteria are met. ***Id.*** However, the only work relevant to this time frame are the unsuccessful attempts at repair made by Appellant, not its subcontractors. ***See generally id.*** at Exhibit A, at ¶¶ 1-131; ***id.*** at Exhibit B, at ¶¶ 1-9. The amendment, therefore, has no effect on our analysis as it relates to the
*(Footnote Continued Next Page)*

Exhibit C, at 11. The insurance policy outlines several exclusions, the incidence of which would not entitle Appellant to coverage under the policy. *Id.* at Exhibit C, at 1-4. In particular, the policy does not cover "'bodily injury' or 'property damage' expected … from the standpoint of the insured;" nor does the policy cover "'property damage" to "impaired property" resulting from "a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'" *Id.* at Exhibit C, 1, 4.

The Sarbers' second amended complaint alleges that the residence that Appellant constructed "was built in a defective condition." Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at Exhibit B (Sarbers' Second Amended Complaint), at ¶ 4. The second amended complaint outlines specific examples of defective portions of the residence including, *inter alia*, torn drywall, sloped floors, and cracks on various surfaces throughout the residence. *Id.* at Exhibit B, at ¶ 5a-5s. The Sarbers incorporated into their second amended complaint, paragraphs one through 131 of their amended complaint. *Id.* at Exhibit B, at ¶¶ 1-2. The Sarbers' amended complaint alleges that the Sarbers noticed defects in their home, and Appellant visited one year after its completion to address those defects. *Id.* at Exhibit A, at ¶¶ 9-10. Appellant's attempts at correcting the defects were ineffective, and the "the cracks continued to widen[,] … the doors

*(Footnote Continued)* ─────────────

issue presented by Appellant, *i.e.* whether mine subsidence or subcontractors caused the damage to the Sarbers' residence.

continued to stick[,] and the structure continued to shift." ***Id.*** at Exhibit A, at ¶ 15. The Sarbers also allege in their amended complaint that after Appellant installed a "cement footing" in the garage to remedy some of the defects, "the walls throughout the home buckled and a number of doors became immovable throughout the house." ***Id.*** at Exhibit A, at ¶ 17. Relevant to Appellant's issue are the following allegations.

> 7. Paragraph 16, [ASSIGNMENT], of the Contract [between Appellant and Sarbers for the construction of the residence] provided that, "*Contractor* [Appellant] *may subcontract portions of the work to subcontractors.*" and JEFF SORICK HEATING & COOLING, INC. was retained by [Appellant] as his agent to install the heating and cooling system.
>
> ...
>
> 18. Defendant, [Appellant], hired an Engineer firm … to assess an alternate cause of damage and … [the] findings were that the damage to the structure was a result of [m]ine [s]ubsidence with the exception of the buckling of the interior walls of the home, which was caused by Defendant [Appellant], jacking up the home.
>
> …
>
> 20. Defendant, THE PHOENIX INSURANCE COMPANY, ONE OF THE TRAVELERS PROPERTY CASUALTY COMPANIES[,] dispatched their own Engineer and Claims Adjuster to investigate and assess the damages and causes thereof.
>
> 21. The Engineer for Defendant, THE PHOENIX INSURANCE COMPANY, ONE OF THE TRAVELERS PROPERTY CASUALTY COMPANIES[,]determined that the cause of damage was not that of [m]ine [s]ubsidence, but of deficient floor framing, and

inadequate compaction of the supporting soil done by the Defendant, [Appellant].

…

28. [The Sarbers] aver that some or all of the damage to their home may have been the result of mine subsidence.

*Id.* at Exhibit A, at ¶¶ 7, 18, 20-21, 28 (italics in original).

Appellant contends that "[t]he Sarbers' alternative claim of damage due to unexpected mine subsidence entitles [Appellant] to the insurance coverage[,]" as the mine subsidence can qualify as an "occurrence." Appellant's Brief at 10-11.

In ***Kvaerner***, our Supreme Court interpreted what "occurrence" means in the context of a commercial general liability policy, which provided an identical definition of "occurrence" as the one used in the policy at issue herein. ***Kvaerner***, ***supra*** at 897-899. The Court determined that the use of the word "accident" to define "occurrence" "implies a degree of fortuity that is not present in a claim of faulty workmanship" and held, in order to constitute an "occurrence," the "accident" resulting in damage cannot be based on allegations of faulty workmanship. ***Id.*** at 898-899.

While paragraph 28[6] of the Sarbers' amended complaint avers some of the damage was the result of mine subsidence and paragraphs 18 and 20

_____

[6] We note paragraph 28 is an allegation included in count one of the Sarbers' complaint alleging breach of contract against the Phoenix Insurance
*(Footnote Continued Next Page)*

provide alternate allegations as to what extent, if any, mine subsidence damaged the residence, Appellant fails to acknowledge that the Sarbers claim it was the **failure** of Appellant to account for the condition of the land, including the existence of mine subsidence, which led to the defects in their home. Specifically, the Sarbers' complaint alleges Appellant constructed the home in a non-workmanlike fashion by "developing a poorly designed construction plan and performing in a negligent manner in reference to the requirements of the contract **and the condition of the land**." Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at Exhibit A, at ¶ 40d (emphasis added). They further allege faulty workmanship by Appellant's failure to "take proper measurements and engage in proper planning in erecting the residence" and by Appellant "installing a wood beam with steel support without inspection and proper analysis and **claiming there was no mine subsidence**." *Id.* at Exhibit A, at ¶ 40f-40g (emphasis added). Notably, the Sarbers allege in the underlying suit that Appellant "knew or should have known of the intimate details of the deficient soil conditions of the lot … but failed to disclose the same … and also failed to undertake

*(Footnote Continued)* ────────────

Company and is not included in the allegations against Appellant. Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at Exhibit A, at ¶ 28. However, consistent with our plenary review, we consider all well-pleaded statements of fact in deciding if judgment on the pleadings was proper. **See Sw. Energy Prod. Co.**, **supra**.

adequate measures with respect to addressing aforesaid conditions of the soil and lot." *Id.* at Exhibit A, at ¶ 42.

Applying the above principles, we conclude the language of the complaint does not trigger a responsibility for Erie to defend Appellant under their insurance policy. *See Indalex*, *supra*; *Am. Nat'l Prop.*, *supra*. The Sarbers' complaint alleges several specific instances of faulty workmanship evidenced by physical defects in the home. *See generally* Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at Exhibit A, ¶¶ 1-131; *id.* at Exhibit B, at ¶¶1-9. Further, the complaint unambiguously attributes the defects to Appellant's non-workmanlike construction as well as the failure to construct the home in light of and with consideration to the particular characteristics of the lot on which the residence was constructed, *i.e.*, accounting for any mine subsidence that existed. *Id.* at Exhibit A, at ¶¶ 40-44. Accordingly, we conclude the allegations in the underlying complaint do not entitle Appellant to Erie's coverage under the insurance policy, and the trial court properly granted judgment on the pleadings regarding Erie's obligation to Appellant with respect to the allegations of mine subsidence.

Appellant also asserts that judgment on the pleadings was premature because "the Sarbers' underlying lawsuit indicates that some or all of the damage may have been caused by the actions of outside contractors and/or subcontractors[,]" which could constitute an "excludable occurrence" under the insurance policy. *Id.* at 12. We disagree.

- 12 -

As noted above, the insurance policy outlines several exclusions to coverage including defects in "your work." The insurance policy defines "your work" as follows.

22. "Your work":

a. Means:

1) Work or operations performed by you or **on your behalf**; and

2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes[:]

1) Warranties or representations made at any time with respect to the fitness, quality, durability performance or use of "your work;" and

2) The providing or failure to provide warnings or instructions.

Erie's Amended Complaint for Declaratory Judgment, 6/3/13, at Exhibit C, at 12 (emphasis added). Moreover, the underlying contract permitted Appellant to assign work to subcontractors to complete on Appellant's behalf. *Id.* at Exhibit A, ¶ 7. The policy language is unambiguous and has the practical effect of equating work performed by subcontractors, on behalf of Appellant, as Appellant's work. Accordingly, faulty or defective work performed by subcontractors does not entitle Appellant to coverage under the policy.

Appellant attempts to characterize the work of its subcontractors as an occurrence, entitling it to Erie's coverage. Appellant's Brief at 12. In support of this position, Appellant cites to this Court's decision in ***Millers Capital Ins. Co. v. Gambone Bros. Dev. Co. Inc.***, 941 A.2d 706 (Pa. Super. 2007), *appeal denied*, 963 A.2d 471 (Pa. 2008). Appellant's Brief at 12-14. In ***Millers***, this Court relied on ***Kvaerner*** and concluded, "'[o]ccurrence' refers to 'accidental' phenomena—not claims predicated on allegations of faulty workmanship." ***Millers***, ***supra*** at 718. Further, the ***Miller*** Court rejected, as a contradiction, permitting claims of faulty workmanship by subcontractors to proceed because such is not an "'occurrence' as a matter of plain language and judicial construction." ***Id.*** at 716, *citing* ***Kvaerner***, ***supra*** at 899. While ***Millers***, in dicta, speculated that there could be unique, factual circumstances where a subcontractor's work could be an "occurrence" and provided examples of such, we agree with the trial court that there is no allegation in the underlying complaint that "such facts are at issue in this case." Trial Court Opinion, at 5. Therefore, Appellant is not entitled to coverage, as the subcontractors' work is not an "occurrence" under the insurance policy.

Based on the foregoing discussion, we conclude the trial court properly granted judgment on the pleadings in favor of Erie, as the allegations in the underlying complaint do not give rise to a duty to defend Appellant. ***See*** ***Sw. Energy Prod. Co.***, ***supra***; ***Indalex***, ***supra***; ***American Nat'l Prop.***,

*supra*.  Likewise, because Erie does not have a duty to defend Appellant, it does not have a duty to indemnify Appellant for costs incurred in connection with the underlying lawsuit.  *See Indalex*, *supra*.  Accordingly, the trial court's August 20, 2014 order is affirmed.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/2015