**[J-31-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | : | No. 20 WAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered November |
| | : | 22, 2017 at No. 869 WDA 2016, |
| v. | : | vacating the Judgment of the Court |
| | : | of Common Pleas of Washington |
| | : | County entered June 15, 2016 at |
| TRACY L. MOORE AND HAROLD E. | : | No. 2014-4931 and remanding. |
| MCCUTCHEON, III, INDIVIDUALLY AND | : | |
| AS ADMINISTRATORS OF THE ESTATE | : | ARGUED: April 11, 2019 |
| OF HAROLD EUGENE MCCUTCHEON, | : | |
| JR., AND RICHARD A. CARLY, | : | |
| | : | |
| Appellees | : | |

**OPINION**

**JUSTICE DOUGHERTY[1]**                          **DECIDED: APRIL 22, 2020**

We consider whether the alleged conduct of an insured, Harold Eugene McCutcheon, Jr. (McCutcheon), as described in a personal injury lawsuit filed against his estate by Richard A. Carly (Carly), obligates McCutcheon's insurer, appellant Erie Insurance Exchange (Erie) to defend the estate against Carly's complaint. We hold Carly's allegations were sufficient to trigger Erie's duty to defend and accordingly affirm the order of the Superior Court.

---

[1] The matter was reassigned to this author.

I.

The following material facts are alleged in Carly's complaint. On the evening of September 26, 2013, McCutcheon broke into the home of his ex-wife, Terry McCutcheon, in order to shoot and kill her, and then kill himself. He communicated these intentions in a note he left for his adult children. McCutcheon succeeded in executing this plan, first shooting and killing Terry and, eventually, shooting and killing himself. However, after McCutcheon killed Terry but before he killed himself, Carly arrived on the scene. Carly, who had been dating Terry, approached the front door of her home, rang the doorbell and received no answer. Carly became concerned, placed his hand on the doorknob "in order to enter and the door was suddenly pulled inward by [McCutcheon] who grabbed [Carly] by his shirt and pulled him into the home." McCutcheon was "screaming, swearing, incoherent, and acting 'crazy.'" Then, "a fight ensued between the two and at the time, [McCutcheon] continued to have the gun in his hand" which he apparently had used to kill Terry. During this "struggle" between the two men, McCutcheon was "knocking things around, and in the process [he] negligently, carelessly, and recklessly caused the weapon to be fired which struck [Carly] in the face," causing severe injuries. In addition, "other shots were carelessly, negligently and recklessly fired" by McCutcheon, "striking various parts of the interior of the residence and exiting therefrom." Carly Complaint, 2/20/2014 at ¶¶5-21.

Carly filed suit against McCutcheon's estate, and the estate — administered by McCutcheon's adult children — sought coverage of the lawsuit under two insurance policies issued by Erie to McCutcheon: the Erie Insurance Home Protector Policy (homeowner's policy) and the Erie Insurance Personal Catastrophe Liability Policy (personal catastrophe policy).

McCutcheon's homeowner's policy states, in relevant part:

> We will pay all sums up to the amount shown on the Declarations which anyone we protect becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence during the policy period. We will pay for only bodily injury or property damage covered by this policy.

Homeowner's Policy at 14. The homeowner's policy defines an "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions." *Id.* at 5. Similarly, McCutcheon's personal catastrophe policy provides coverage for amounts an insured becomes legally obligated to pay due to personal injury resulting from an "occurrence," and defines a covered "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage which is neither expected nor intended." Personal Catastrophe Policy at 3-4. Finally, both policies expressly exclude from coverage "bodily injury, property damage or personal injury expected or intended by anyone we protect." Homeowner's Policy at 15; Personal Catastrophe Policy at 4 (excluding "personal injury or property damage expected or intended by anyone we protect"). The homeowner's policy further provides expected or intended injury is excluded even if "the degree, kind or quality of the injury or damage is different than what was expected or intended," or "a different person, entity, real or personal property sustained the injury or damage than was expected or intended." Homeowners Policy at 15. Based on these provisions, Erie concluded it owed no coverage to the estate because Carly's injuries were not caused by an accidental "occurrence," but rather were "expected or intended" by McCutcheon. As a result, Erie filed the present declaratory judgment action.

The parties engaged in discovery and eventually filed cross-motions for summary judgment. The trial court agreed with Erie and granted summary judgment in its favor,

holding Erie had no duty to defend the estate against Carly's complaint. The court reasoned "[t]he shooting of Carly plainly resulted from human agency. Moreover, the prospect of injury from a gun firing during a physical struggle over that gun was no less plainly and reasonably anticipated." *Erie Ins. Exch. v. Moore*, No. CR 2014 – 4931, unpublished order at 7 (Wash. Co. filed May 31, 2016), *citing United Serv. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 989 (Pa. Super. 1986) ("An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result."). The court stated the shooting "cannot fall within the definition of an accident," and "the deliberate conduct of [McCutcheon] did not constitute an 'occurrence' that would trigger coverage[.]" *Id.* The court further opined the use of the terms "negligently, carelessly, and recklessly" in Carly's complaint did not result in a duty to defend; instead, the court found "no evidence that the shooting was accidental or negligent." *Id.* at 8. Specifically, the court noted McCutcheon "forcibly pulled Carly inside," and after Carly was shot, McCutcheon "did not verbally indicate that he did not mean to injure Carly nor did he attempt to assist Carly in any way." *Id.* The court concluded McCutcheon thus "intended to cause serious harm to Carly." *Id.*[2]

---

[2] It appears the trial court may have relied at least in part upon additional facts adduced through Carly's deposition testimony. *See, e.g.*, *Erie Ins. Exch. v. Moore*, No. CR 2014 – 4931, unpublished order at 3, 8 (Wash. Co. filed May 31, 2016). The Superior Court also referred to some of this additional evidence in its own opinion. *See Erie Ins. Exch. v. Moore*, 175 A.3d 999, 1006-07, 1012 n.14 (Pa. Super. 2017). However, in deciding the issue before us, *i.e.*, whether Erie has a duty to defend the estate against Carly's complaint, we focus only on the allegations of the complaint, and compare them to the four corners of the applicable insurance contracts. *American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (question of coverage depends on "comparing the four corners of the insurance contract to the four corners of the complaint").

On appeal, the Superior Court reversed in a published opinion. *Erie Ins. Exch. v. Moore*, 175 A.3d 999 (Pa. Super. 2017). The panel considered whether the allegations of the complaint set forth a claim that the shooting was a covered occurrence, *i.e.*, an accident resulting in injuries that were not expected or intended by the insured. *Id.* at 1009. The panel observed "gunshot wounds commonly are inflicted deliberately," but "not all injuries from gun violence are intentional." *Id.* at 1010. The panel eschewed "abstract notions about the reasonably foreseeable results of gun violence" and focused instead on "the specific events that gave rise to Carly's injuries as a result of McCutcheon's brandishing of a firearm." *Id.*, *citing*, *inter alia*, *Elitzky*, 517 A.2d at 987 ("Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage. The exclusion is inapplicable even if the insured should reasonably have foreseen the injury which his actions caused.").[3] The panel recognized the complaint's "legal terminology" of negligence and carelessness "cannot control the outcome," but nevertheless determined the allegations "fairly portray a situation in which injury may have been inflicted unintentionally." *Id.* at 1012. Distinguishing prior cases where the allegations of the complaint clearly described intentional conduct by an insured,

---

[3] In *Elitzky*, the Superior Court determined an insurer had a duty to defend insured defendants in an action alleging damages resulting from the insureds' defamatory statements, where the insurance policy excluded from coverage damages "expected or intended by the insured." *See Elitzky*, 517 A.2d at 985, 992. In reaching this conclusion, the court distinguished between an insured's intention to merely commit the act resulting in damage, and an intention to cause the actual resulting damage. *Id.* at 987-88. The court reasoned the latter inquiry was dispositive and required an element of subjective conscious awareness by the insured; the policy's terms were thus ambiguous "and must be construed against the insurer." *Id.* at 989.

the panel concluded Erie had a duty to defend McCutcheon's estate against Carly's lawsuit.[4]

Erie filed a petition for allowance of appeal and we granted discretionary review of the following questions:

> 1. Does the Superior Court's ruling that shooting a person during a fight, in turn, during a planned murder-suicide, constituted an "occurrence" under a liability insurance policy conflict with Pennsylvania law as established by this Court?
>
> 2. Does the Superior Court's ruling conflict with its own decision in *American National Property and Casualty Co. v. Hearn*, 93 A.3d 880 (Pa.Super. 2014), and misconstrue the intentional acts exclusion of a liability insurance policy?
>
> 3. Does the Superior Court's ruling conflict with Pennsylvania public policy, as stated in *Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 747 ([Pa.] 1999), that liability insurance does not cover damages caused as a result of evil or illegal conduct?

*Erie Ins. Exch. v. Moore*, 189 A.3d 382 (Pa. 2018) (*per curiam*). The issues present legal questions as to which our scope of review is plenary and our standard of review is *de novo. Skotnicki v. Ins. Dep't*, 175 A.3d 239, 247 (Pa. 2017). We consider whether the Superior Court erred when it reversed the trial court's grant of summary judgment in favor of Erie, and more specifically, whether the trial court erroneously determined the "four corners of the complaint" cannot support a conclusion that Carly's injuries were caused

---

[4] The panel also discussed certain record-related anomalies, "lament[ing] the state of the record" and noting the parties failed to ensure that deposition transcripts and other discovery materials they attached to their motions for summary judgment were not included in the certified record on appeal. 175 A.3d at 1005-08. In addition, the panel criticized the trial court for improperly basing its decision in part on materials outside the complaint, specifically referring to Carly's deposition testimony. *Id.* at 1012. Ultimately, as the panel recognized, these evidentiary detours are not relevant to disposition of the present matter. *Id.* at 1008, 1011; *see also* fn.2 *supra, citing Jerry's Sport Ctr.*, 2 A.3d at 541.

by a covered "occurrence." *See, e.g., American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) ("[W]hether a claim is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.").

II.

A.

Erie argues the trial court correctly granted summary judgment in its favor and the Superior Court erred in reversing that decision. Erie contends it does not have a duty to defend McCutcheon's estate against Carly's lawsuit because the factual allegations in the Carly complaint do not constitute an insurable "occurrence." Erie asserts instead the facts "describe a shooting during the commission of multiple felonies." Erie's Brief at 17. Erie notes the term "occurrence," in the context of a liability insurance policy, is defined as an "accident," and this Court has interpreted "accident" as something that is "unexpected" or "undesirable." *Id.* at 18-19, *citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897-98 (Pa. 2006); *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007). Erie insists "a gunshot injury sustained at the hands of a perpetrator of a premeditated murder-suicide is not the sort of event that has the requisite degree of fortuity necessary to constitute an 'occurrence.'" *Id.* at 20. Erie further argues injuries resulting from a physical altercation are not "unexpected," and a "willful and malicious assault" is not an accident but an intentional tort that does not trigger an insurer's duty to defend. *Id.*, *quoting Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988) ("willful and malicious assault" alleged in complaint seeking recovery for injuries sustained in bar fight was not an accident covered by policy but rather an intentional tort).

Erie further faults the Superior Court's reliance on *Elitzky* to hold there is a covered "occurrence" because *Elitzky* had nothing to do with whether a physical assault is an accident. *Id.* at 22. Erie argues the court should have viewed the totality of the facts from McCutcheon's perspective, and the fact he never made an affirmative statement of his intention to harm Carly does not rule out a determination he acted intentionally. *Id.* at 34. Erie claims McCutcheon shot Carly as part of a "single non-accidental criminal act." *Id.* at 35. Erie contends the Superior Court erred by: (1) creating a narrative of the events reflecting an erratic and unplanned gunfire, which Erie argues "go[es] beyond the complaint;" (2) disregarding the allegations in the Carly complaint, which establish McCutcheon premeditated a murder-suicide; and (3) accepting Carly's "artful pleading" to convert intentional actions into insurable occurrences in contravention of *Haver* — which held it is against public policy to provide insurance coverage of intentional illegal conduct — and *Hearn* — which held an insured's intentional acts were excluded from coverage even though the insured did not intend the resulting serious injuries. *See id.* at 17-48; *see also* Erie's Reply Brief at 4 (characterizing the allegations in the complaint "as a non-accidental shooting in the midst of a pre-meditated murder-suicide plot"). Here, according to Erie, McCutcheon's decision to fight with Carly "while brandishing — and discharging — a firearm was an intentional act," and there is no duty to defend because Carly's injuries "were of the same general type which were expected or intended under the circumstances." Erie's Brief at 52-53.

American Insurance Association; Property Casualty Insurers Association of America; Insurance Federation of Pennsylvania, Inc.; Pennsylvania Defense Institute; and Philadelphia Association of Defense Counsel filed an *amici curiae* brief in support of Erie. They contend that a fundamental condition of insurance coverage is fortuity. They argue McCutcheon's actions were intentional and to hold otherwise would "remove the

required element of fortuity essential to a valid transfer of risk." *Amici* for Erie's Brief at 7, 9-10. They further speculate that "provid[ing] coverage for intentional or criminal conduct may incentivize policyholders to engage in such conduct[.]" *Id.* at 12-13.

B.

Carly argues the Superior Court properly evaluated the factual allegations in his complaint, and correctly determined they made out a duty to defend McCutcheon's estate. Carly observes there is a duty to defend unless it is "clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." Carly's Brief at 14, *citing Gen. Accident Ins. Co. v. Allen*, 692 A.2d 1089, 1093 (Pa. 1997). Carly notes that, in determining whether the claim "potentially comes" within the policy's coverage, the factual allegations of the complaint against the insured must be taken as true, and if doubt or ambiguity exists, it must be resolved in favor of coverage. *Id.* at 15, *citing*, *inter alia*, *Jerry's Sport Ctr.*, 2 A.3d at 540. Moreover, according to Carly, if there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the "'claim is narrowed to one patently outside the policy coverage.'" *Id., quoting Stidham v Millvale Sportsmen's Club*, 618 A.2d 945, 953-54 (Pa. Super. 1992). Carly rejects Erie's position that the Superior Court relied on the complaint's legal characterization of the insured's conduct as negligent, careless or reckless — *i.e.*, what Erie considers mere "artful" pleading. Rather, Carly argues, the Superior Court correctly considered the allegations as "fairly portray[ing] a situation in which injury may have been inflicted unintentionally." *Id.* at 18, *quoting Erie Ins.*, 175 A.3d at 1012.

Carly further notes the fact McCutcheon intentionally pulled him inside the house before their physical struggle began is not dispositive, as Carly is not seeking damages

for injuries caused by this particular action by the insured, nor is he seeking damages for the intentional killings of Terry McCutcheon or McCutcheon himself. *Id.* at 21-22. Carly further observes Pennsylvania courts have rejected attempts by insurance carriers to disclaim coverage solely because a complaint includes allegations of criminal conduct. *Id.* at 22-24, *citing Eisenman v. Hornberger*, 264 A.2d 673, 673-74 (Pa. 1970) (insured accidentally burned down house he was burglarizing; liability coverage applied as long as allegations of negligence were separate and distinct from the criminal conduct); *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 929-30 (Pa. Super. 2004) (insurer had duty to defend insured where underlying complaint alleged she negligently caused infant's death, notwithstanding her criminal conviction for intentionally killing the child; civil complaint contained specific and detailed factual averments of negligence).

Carly dismisses the cases Erie relies on to deny coverage as inapposite, because they involved allegations of intentional acts, not the accidental discharge of a gun. According to Carly, the allegations of his complaint, when taken as true, indicate the insured accidentally shot him and, consequently, cases where an insured intentionally shoots a weapon causing injury, or intentionally commits a tortious act that results in greater harm than anticipated, do not apply. Carly emphasizes he made no allegation that McCutcheon pointed the gun at him or threatened him, and Carly does not seek relief for any intentional acts. For this reason, Carly argues, *Haver* is inapposite because the allegations of the underlying complaint clearly described intentional conduct, *i.e.*, the insured distributed drugs without a prescription, against the express instructions of decedent's doctors and family, and the complaint's characterization of this conduct as negligent "malpractice" did not affect the coverage analysis. Carly further claims *Hearn* is not relevant; although the policy in that case excluded unintended consequences, it

was clear the insured's alleged conduct in striking his friend was intentional.  In this case, Carly argues, the complaint alleges an accidental, not intentional, shooting.

Finally, Carly argues public policy weighs in favor of coverage in this case.  Carly claims a holding denying the duty to defend under the circumstances would not serve as a crime deterrent, since providing coverage to Carly "in no way saves the insured from the consequences of his criminal act."  *Id.* at 40, *quoting Eisenman*, 264 A.2d at 675. Moreover, Carly notes, by denying coverage, Erie presumes the accidental discharge of the gun was criminal, and suggests its policy excludes all risks associated with gunfire; Carly emphasizes although Erie could have written its policy to expressly exclude such risks, it did not.  According to Carly, holding there is a duty to defend the allegations in his complaint serves the important public policy of providing compensation to tort victims.

United Policyholders filed an *amicus curiae* brief in support of Carly, in which it highlights that insurers have a broad duty to defend and posits the Superior Court applied the appropriate standard to reach the correct result.  United Policyholders Brief at 4-7. *Amicus* notes it is the allegations in the Carly complaint that are determinative of the duty to defend, and because the complaint alleges an accidental injury, the duty is triggered. *See id.* at 7-13.

III.

An insurer's duty to defend is broader than its duty to indemnify, and the duty to defend is triggered "if the factual allegations of the complaint on its face encompass an injury that is actually or **potentially** within the scope of the policy." *Babcock & Wilcox Co. v. American Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015) (internal quotation and citation omitted) (emphasis added).  The truth of the complaint's allegations is not at issue when determining whether there is a duty to defend; the allegations are to be "taken as

true and liberally construed in favor of the insured." *Jerry's Sport Ctr.*, 2 A.3d at 541 (internal quotation and citation omitted). Whether a claim is "potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." *Id.* And, if any doubt or ambiguity exists, it must be resolved in favor of coverage. *Id.* at 540. Moreover, to the extent there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the "claim is narrowed to one patently outside the policy coverage," for example through discovery. *Mace v. Atlantic Refining Marketing Corp.,* 785 A.2d 491, 500 (Pa. 2001) (Saylor, J., dissenting); *see also Stidham,* 618 A.2d at 953-54.

Here, the "four corners of the complaint" — when taken as true and liberally construed — make out an accidental shooting. A fair reading of the complaint reveals the following. Erie's insured Harold McCutcheon intentionally shot his ex-wife, and then himself, as part of a premeditated murder-suicide. Unfortunately, however, before McCutcheon killed himself, Carly appeared on the scene, knocking on the door of the victim's house, and trying the door handle. The complaint then states Carly "was suddenly pulled inward by [McCutcheon] who grabbed [Carly] by his shirt and pulled him into the home." At this point, McCutcheon "was screaming, swearing, incoherent, and acting 'crazy,'" and "a fight ensued between the two." McCutcheon continued to wield his gun, and the "struggle" resulted in the men "knocking things around." Next, McCutcheon "negligently, carelessly and recklessly caused the weapon to be fired," striking Carly and "various parts of the interior of the residence." Carly further alleged his injuries were "wholly, directly and proximately caused by [McCutcheon's] negligence, carelessness and recklessness." Complaint at ¶¶16-21. These allegations are not mere "artful" pleading designed to present intentional acts as accidental for purposes of insurance coverage. *See, e.g.*, *Haver*, 725 A.2d at 745 ("[T]o allow the manner in which the

complainant frames the request for redress to control . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies."). Instead, taken as true, they present a factual scenario that potentially comes within the definition of a covered "occurrence," and to which the Erie exclusion for bodily injury "expected or intended" by the insured does not apply.

Indeed, this case is easily distinguished from the precedent relied on by Erie for the opposite conclusion. In *Haver*, for example, the Court determined there was no duty to defend the insured — a pharmacist who provided controlled substances to the plaintiffs' decedent without a prescription, and in derogation of express warnings by her parents and physician. 725 A.2d at 746. The pharmacist-insured may not have intended to cause the resulting overdose and death, but the alleged facts clearly established he provided the drugs on purpose. In other words, the plaintiffs' "artful" pleading that the pharmacist acted "negligently" could not bring his obviously intentional conduct under the policy. *Id.* at 745-46. *Haver* does not control this case because the allegations of Carly's complaint do not make crystal clear that McCutcheon shot Carly on purpose, or that he "expected or intended" to cause Carly's bodily injuries. And, under the applicable standards, we may not provide this inference.

Erie also similarly relies on *Hearn* to no avail. Although the complaint in that case referred to "negligent" conduct by the insured, the allegations clearly described intentional conduct — the insured struck his friend on purpose during a game, resulting in an unexpectedly serious injury. The language in the *Hearn* complaint that purported to allege negligence was thus not dispositive. *See Hearn*, 93 A.3d at 886 ("Regardless of whether appellants chose to plead a negligence cause of action, it is clear from the undisputed facts that Hearn's assault on Clayton was intentional."). But, the allegations in the present complaint are not clear about McCutcheon's intentions with respect to Carly; taken as

true, the allegations establish he intended to kill his ex-wife and himself, but not that he intended to shoot Carly. More to the point, the complaint's allegations — when read in light of the guiding standards — establish at least a duty to defend the insured's estate, and that duty adheres until the claim is "narrowed to one patently outside the policy coverage." *Stidham,* 618 A.2d at 953-54.

Thus, Carly's complaint establishes the insured intended to kill his wife, and then later, intended to pull the victim into the house and fight with him while wielding a firearm. Contrary to Erie's view, this surprise encounter with Carly was not part of the insured's other intentional conduct for purposes of insurance coverage, and in fact, Carly does not seek damages for a fistfight or shoving match. Carly's lawsuit seeks damages for being shot by the insured. Had the policy's exclusion expressly stated coverage would not apply to incidents involving firearms, or during the commission of a crime, then perhaps there would be no duty to defend the underlying claims by Carly. But the policy does not say this. Instead, it excludes from coverage bodily injury "expected or intended" by the insured, and to the extent this language is ambiguous in the presently alleged factual context, it must be construed in favor of coverage. *See, e.g., Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999) ("Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer[;]" "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.") (internal citations and quotation omitted). Erie's reading ignores this precept, and seems instead to presume an insured's mere possession of a firearm precludes coverage of a negligent or accidental discharge. We reject Erie's interpretation.

We further reject the argument by Erie and its *amici* that finding a duty to defend here ignores the basic principle that "fortuity" is essential to a valid transfer of risk between

an insured and insurer, and providing coverage for criminal conduct like McCutcheon's will incentivize insureds to engage in criminal activity. The argument is beside the point because, as we have seen, the complaint's allegations do not preclude the possibility McCutcheon accidentally shot Carly, despite the fact he intentionally shot Terry McCutcheon, or intentionally pulled Carly into the house before the shooting. Denying a duty to defend under such circumstances would not serve as a crime deterrent, and would unnecessarily withhold compensation to tort victims.

For all the foregoing reasons, we hold Erie has a duty to defend McCutcheon's estate against Carly's lawsuit, and therefore affirm the order of the Superior Court.

Justices Baer, Donohue and Wecht join the opinion.

Justice Mundy files a dissenting opinion in which Chief Justice Saylor and Justice Todd join.