J-A14004-16

2016 PA Super 205

| QBE INSURANCE CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| JALIL WALTERS AND RASHEEDA CARTER OK CAFE, INC. AND DONALD BOWERS, SR. | |
| Appellants | No. 1797 MDA 2015 |

Appeal from the Order Entered October 1, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2014-CV-06735-CV

BEFORE:  BOWES, OTT AND PLATT,* JJ.

OPINION BY BOWES, J.:                    **FILED SEPTEMBER 09, 2016**

Jalil Walters and his wife Rasheeda Carter, OK Café, Inc. and Donald Bowers, Sr. (collectively "Insureds"),[1] appeal from the trial court's grant of summary judgment in favor of QBE Insurance Corporation ("QBE") and its corresponding denial of their motion for summary judgment in this declaratory judgment action.  The issue involves the applicability of an exclusion in a commercial general liability policy.  We affirm.

---

[1] We recognize that Mr. Walters and Ms. Carter are not named insureds on the insurance policy at issue herein, but include them under this umbrella for ease of discussion.

* Retired Senior Judge assigned to the Superior Court.

OK Café, Inc. operates Jazzland Bar ("Jazzland"), located in Steelton, Pennsylvania. Mr. Bowers owns OK Café. OK Café and Mr. Bowers (collectively "OK Café") purchased a general liability policy from QBE. That policy provides coverage for "bodily injury" and "property damage" occurring in the course of OK Café's operations at Jazzland, as well as "personal and advertising injuries," as those terms are defined by the policy. Coverage under the policy is subject to certain exclusions, one of which, the Assault and Battery exclusion, is at issue herein.

The facts underlying this dispute are as follows. On September 9, 2011, Mr. Walters and three friends were patrons of Jazzland. As they exited the bar, Eric Chambers confronted Mr. Walters regarding an earlier slight by Mr. Walters. Mr. Chambers brandished a firearm during the altercation, but the situation was diffused without further violence. Mr. Chambers returned to the bar, and Mr. Walters and his friends continued to their vehicle. Jazzland security personnel, including the head of security, witnessed the incident.

Upon realizing they were heading in the wrong direction, Mr. Walters and his friends reversed course. Their path led them back to the entrance to Jazzland just as Mr. Chambers and the head of security were exiting the building. A second dispute arose. Sometime during this encounter, Mr. Chambers drew and fired his weapon, striking Mr. Walters in the stomach and arm.

Mr. Walters and Ms. Carter commenced a negligence action against OK Café and Mr. Bowers (the "underlying complaint"). They alleged that OK Café was aware that patrons brought firearms into Jazzland, and that the surrounding area was a high crime neighborhood. Consequently, OK Café had undertaken security precautions to ensure the safety of its customers. Mr. Walters pled that OK Café employed security personnel charged with using a hand-held metal detector on patrons as they entered Jazzland. Mr. Walters averred that OK Café was negligent in allowing Mr. Chambers to enter and exit the bar while armed, and in failing to ensure Mr. Walters' safety. In addition, the complaint asserted that OK Café failed to properly employ, train, and supervise its employees regarding the safety of its patrons, or take sufficient precautions or issue warnings to protect Mr. Walters from Mr. Chambers. Ms. Carter asserted a claim for loss of consortium.

Following initiation of the underlying suit, OK Café requested that QBE defend and indemnify it in the lawsuit. QBE, believing that coverage was excluded based upon an "assault and battery" exclusion contained in the policy, instituted the instant declaratory judgment action against Mr. Walters, Ms. Carter, OK Café, and Mr. Bowers to adjudicate its obligations under the policy. Subsequently, the parties filed cross-motions for summary judgment. The court entered summary judgment in favor of QBE, and denied the same as to the Insureds. Insureds filed a timely appeal, and

complied with an order to file a Rule 1925(b) concise statement of matters complained of on appeal. The trial court issued its Rule 1925(a) opinion, and this matter is now ready for our consideration.

The Insureds present one issue for our review:

Whether the trial court erred in finding that QBE is not obligated to defend and indemnify OK Café and Bowers on the claims found in the underlying complaint pursuant to the terms of the assault and battery exclusion because those claims, which are limited to claims of negligence against the underlying defendants for the negligent provision of security, allege direct causation of the alleged injuries and do not fall within the assault and battery exclusion of the policy?

Appellant's brief at 4.

Our scope of review of an order granting summary judgment is plenary. *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 10 (Pa. 2015). Our standard of review is that "the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion." *Id*. In addition,

[s]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that the reasonable minds cannot differ, a trial court may property enter summary judgment.

*Id*.

The proper construction of an insurance policy is resolved as a matter of law in a declaratory judgment action. *Erie Ins. Exchange v. Lobenthal*, 114 A.3d 832, 836 (Pa.Super. 2015) (citation omitted). Thus, as with all questions of law, our scope of review is *de novo* and our standard of review is plenary. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). "The Declaratory Judgments Act may be invoked to interpret the obligations of the parties under an insurance contract, including the question of whether an insurer has a duty to defend and/or a duty to indemnify a party making a claim under the policy." *Lobenthal*, *supra* at 836.

Certain principles inform our review. When an insured who has been sued requests coverage under an insurance policy, the insurer is required to accept all of the allegations contained in the third party's complaint as true and provide a defense if there is a possibility that the injury alleged could fall within the scope of the policy. *Selective Way Ins. Co. v. Hosp. Group Services, Inc.*, 119 A.3d 1035, 1046 (Pa.Super. 2015) (*en banc*). To determine whether an insurer is obligated to defend and potentially indemnify a party, we review the factual allegations contained in the underlying complaint against the insured. *Baumhammers*, *supra* at 291. Generally, exclusionary clauses are strictly construed against the insurer and in favor of the insured. *Swarner v. Mutual Ben. Group*, 72 A.3d 641, 645 (Pa.Super. 2013).

Furthermore, our courts recognize that "the duty to defend is broader than the duty to indemnify." *Kvaerner Metals Div. Of Kvaerner U.S., Inc. v. Commercial Union Ins.*, 908 A.2d 888, 896 n.7 (Pa. 2006). The insurer "may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Selective*, *supra* at 1046. This duty "is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent [so] long as there exists the possibility that the allegations implicate coverage." *Id*. The duty "persists until an insurer can limit the claims such that coverage is impossible." *Id*.

Finally, an insurance company's duty to indemnify an insured "flows from a determination that the complaint triggers coverage." *Id*. However, the duty to indemnify "arises only when the insured is determined to be liable for damages within the coverage of the policy." *Id*. Hence, the duty to indemnify arises only after an insurance company has been found to have a duty to defend.

Insureds argue that the allegations leveled against OK Café fall within the insurance policy's general liability coverage and are not subject to the assault and battery exclusion. In the underlying complaint, Mr. Walters and Ms. Carter alleged negligence in the hiring, training, and supervision of employees, as well as its performance of security checks, its failure to warn

of dangerous conditions, and in its response to such conditions inside and outside the premises. Insureds contend that, since the underlying complaint averred that negligence was allegedly a direct cause of the injury to Mr. Walters, the assault and battery exclusion does not apply. Hence, their position is that QBE owes them both a duty to defend and to indemnify, and the trial court erred in granting summary judgment in QBE's favor.

The assault and battery exclusionary clause provides, in pertinent part:

EXCLUSION – ASSAULT AND BATTERY

This endorsement modifies insurance provided under the
following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETE OPERATIONS COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

* * *

2. Exclusions

This insurance does not apply to:

**Assault and Battery**

(1) "Bodily injury," "property damage," "injury" or "personal
and advertising injury" arising from the following:

(a) "assault and battery" or any act or omission in
connection with the prevention or suppression of such
acts; or

(b) harmful or offensive contact between or among two
or more persons; or

(c) apprehension of harmful or offensive contact between or among two or more persons; or

(d) threats by words or deeds.

(2) This exclusion applies regardless of the degree of culpability or intent and without regard to:

(a) whether the acts alleged to be by or at the instruction or at the direction of the insured, his officers, "employees," agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

(b) the alleged failure of the insured or his officers, "employees," agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, "employee," agent or servant of the insured;

(c) the alleged failure of the insured or his officers, "employees," agents or servants to attempt to prevent, bar or halt any such conduct.

(3) This exclusions also applies to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under subparagraph **(2)(a)**, **(b)**, **or (c)** above; specifically [loss of consortium].

\* \* \*

"Assault and Battery" means:

(a) actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, his "employees," patrons or any other persons; or

(b) the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault; or

> (c) battery; or
>
> (d) the negligent:
>
> > i. employment;
> > ii. investigation;
> > iii. supervision;
> > iv. training;
> > v. retention
> >
> > of a person for whom any insured is or ever was legally responsible and whose conduct is described in **(a)**, **(b)**, **(c)** and **(d)** above.
>
> (e) the alleged failure of the insured or his officers, "employees," agents or servants to attempt to prevent, bar or halt any such conduct.
>
> (f) "Assault and Battery" includes, but is not limited to, sexual assault and battery.

This endorsement also applies to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under subparagraphs **(a)**, **(b)**, **(c)**, **(d)**, **(e)**, and **(f)** above; specifically excluding from coverage claims for:

(1) emotional distress or loss of society, services, consortium and/or income; or

(2) reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization; or

(3) any obligation to share damages with or repay someone who must pay damages because of the injury.

Commercial General Liability Policy SIM100722-11, 2/3/11, Exclusion – Assault and Battery, at 1-2.

Insureds contend that allegations that OK Café's negligence was a direct cause of Mr. Walters' injuries take it outside the assault and battery exclusion. They assert that OK Café's negligence was directly and proximately related to Mr. Walters' injuries, apart from the assault attributable to Mr. Chambers. In addition, they maintain that it is irrelevant whether Mr. Walters' injuries also "arose from" an intentional tort as the policy does not expressly exclude coverage for separate, additional legal causes of injury.

In support of their position, the Insureds rely primarily on *QBE Insurance Corp. v. M&S Landis Corp.*, 915 A.2d 1222 (Pa.Super. 2007) ("*Landis*"). *Landis* involved allegations that a nightclub's employees negligently caused the death of a patron when they forcibly evicted him from the premises. The victim perished after nightclub staff attempted to restrain him by laying on top of him, thus restricting his ability to breathe. The victim's personal representative filed a complaint asserting that the decedent's death was the "direct and proximate result of the negligence and carelessness of [the club and its employees]." *Landis*, 915 A.2d at 1224. The complaint also alleged negligence in the nightclub's hiring, training, and supervision of its staff. *Id*. The defendants sought coverage under a general liability insurance policy it had purchases from QBE. *Id*. QBE filed a declaratory judgment action seeking a judgment that it had no duty to defend or indemnify defendants. The parties filed cross-motions for

summary judgment, and the trial court granted summary judgment in favor of the insurer. *Id*. Landis appealed.

On appeal, the defendants in **Landis** assailed, *inter alia*, the trial court's determination that the conduct alleged in the complaint was excluded from coverage based on the clear and unambiguous language contained in the insurer's assault and battery exclusion. **Id**. That language read, in relevant part, as follows:

> A. This insurance does not apply to actions and proceedings to recover damages for "bodily injury", "property damage" or "personal and advertising injury" **arising from** the following and the Company is under no duty to defend or to indemnify an insured in any action or proceeding alleging such damages:
>
> > 1. Assault and Battery or any act or omission in connection with the prevention or suppression of such acts;
>
> * * *
>
> B. This exclusion applies regardless of the degree of culpability or intent and without regard to :
>
> > 1. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;
> >
> > 2. The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

> 3. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

*Id*. at 1228 (emphasis added). This Court found that the factual allegation in the underlying complaint sounded in negligence, and that decedent's death did not "arise from" an assault and battery, but rather, arose from the negligence of appellants. We concluded that the negligent conduct complained of was not excluded by the assault and battery provision, and therefore, QBE was obligated to defend against the claims. *Id*. at 1229-1230.

Insureds argue that *Landis* compels us to find that QBE owes them a duty to defend and a duty to indemnify since their complaint sets forth allegations that are "remarkably similar" to the allegations found in *Landis*, including an averment that OK Café's negligence was a direct cause of Mr. Walter's injuries. Appellant's brief at 19-20. Although the policy herein also contains the "arising from" language in the assault and battery provision, they represent that the exclusion at issue here is **identical** to the exclusion at issue in *Landis*. **See** Appellant's brief at 17, 18, 28. We disagree.

The *Landis* decision turned on the specific "arising from" language contained in that policy. Apparently, however, the policy did not contain the

extensive definition of "assault and battery" included in the instant policy,[2] which is determinative given the facts at hand. Insureds do not discuss this definition in their brief, nor do they argue how this Court should interpret the exclusion's definition of "assault and battery" to support their position. As the holding in *Landis* relied on an abbreviated version of the assault and battery exclusion, even granting that portion is identical to a portion of the policy herein, it does not control our disposition.

Insureds' policy contains a comprehensive and expansive definition of "assault and battery." It defines an insured's failure to prevent or suppress an assault or battery as an "assault and battery." In addition, the exclusion explicitly encompasses the negligent employment, investigation, supervision, training, and retention of "a person for whom any insured is or ever was legally responsible and whose conduct is described" as "actual or threatened assault or battery whether caused by or at the instigation of any insured, his 'employees,' patrons or any other persons." Liability Policy, *supra*, at 2. Thus, as defined by the terms of the policy, "assault and battery" includes negligent conduct on the part of the insured or its employees that directly

_____

[2] Upon review of *QBE Insurance Corp. v. M&S Landis Corp.*, 915 A.2d 1222 (Pa.Super. 2007) and the record, it is unclear whether the policy involved in *Landis* contained the definition of "assault and battery" included in the policy here. However, since the language was not included in our analysis of the issue in *Landis*, it did not have a bearing on the resolution of that dispute. As we find that language conclusive in this case, *Landis* does not control our disposition.

harms another person, whether through negligent failure to prevent an assault, negligence related to an actual or threatened assault, or negligence resulting in battery. Essentially, the policy places negligent conduct contributing to an assault and battery under the "arising from" umbrella enunciated in **Landis**. Hence, such conduct is excluded from coverage.

Even assuming OK Café breached its duty to Mr. Walters in negligently conducting its security operations, the clear and unambiguous language of the assault and battery provision excludes coverage in this regard. In granting summary judgment on behalf of QBE, the trial court noted that the subject policy "specifically precludes recovery for bodily injury from an assault and battery or any act or omission in connection with the prevention or suppression of such acts[.]" Trial Court Opinion, 12/14/15, at unnumbered 5. It specifies that the policy applies "regardless of the alleged failure of the insured or its employees to attempt to prevent, bar, or halt any such conduct."[3] **Id**. Finally, the court acknowledged that "assault and battery," as defined by the policy, included "the failure of any insured to

_____

[3] Insureds challenge the trial court's reasoning in this regard by claiming they did not allege that OK Café failed to attempt to prevent, bar, or halt the assault, but rather did attempt it, and did so poorly. Appellant's brief at 29. Based on our decision in this matter, we find this to be a distinction without a difference. Whether OK Café was negligent for failing to suppress the assault on Mr. Walters, or failing to meet the requisite standard of care required to suppress the assault, the terms of the exclusion preclude coverage.

prevent or suppress an assault as well as the **negligent** hiring, employment, supervision, and training of any employee or agent who failed to prevent an assault from occurring." *Id*. (emphasis added).

The myriad allegations presented in the underlying complaint fall within the scope of the definition of "assault and battery" contained in the exclusion, and thus, there is no duty to defend or indemnify. After reviewing the record in the light most favorable to the Insureds, we distinguish no genuine issue of material fact, and therefore we discern no abuse of discretion or error of law in the trial court's grant of summary judgment in favor of QBE.

Order affirmed.

Judge Ott joins the opinion.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2016

- 15 -