J-A05017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL D'IMPERIO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NATIONWIDE GENERAL INSURANCE COMPANY A/K/A  NATIONWIDE MUTUAL INSURANCE COMPANY A/K/A NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY | : | No. 1474 EDA 2020 |
| Appellant | : | |

Appeal from the Judgment Entered September 1, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 181001132

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                          **FILED JULY 13, 2021**

Appellant Nationwide General Insurance Company appeals from the judgment entered in favor of Appellee Michael D'Imperio, following a non-jury trial.  Appellant claims the trial court erred by concluding that Appellant had a duty to defend Appellee in the personal injury lawsuit brought against Appellee (DiBello action).  Specifically, Appellant contends that the trial court erred in concluding that (1) the DiBello action involved an occurrence within the meaning of Appellant's insurance policy, and (2) the policy's intentional act exclusion did not apply to the DiBello action.  Appellant also argues that

_____

[*] Former Justice specially assigned to the Superior Court.

the trial court erred by not considering evidence from outside the DiBello complaint. We affirm.

The trial court set forth the following finding of facts:

1. [Appellee,] initiated this action by filing a declaratory judgment complaint on or about October 2, 2018.

2. [Appellee] seeks a declaration from the [trial c]ourt that Nationwide has a duty to defend him in the action docketed in the Philadelphia Court of Common Pleas as ***Anthony DiBello, et al. v. Michael D'Imperio, et al.***, No. 170901836.

3. In the DiBello complaint, Mr. DiBello alleges that [Appellee] intentionally fired a gun at Mr. DiBello. (Joint Stip., Ex. 2B at ¶¶ 8 and 22).[1]

4. Mr. DiBello alternatively alleges that [Appellee] "carelessly fir[ed] a gun in the vicinity of a crowd of people," "creat[ed] a trap and/or nuisance and/or dangerous condition," and "fail[ed] to properly control a firearm." (***Id.*** at ¶ 26).

5. Nationwide insures [Appellee] pursuant to homeowner's policy 5837HP494350 ("the Policy").

6. The Nationwide homeowners policy 5837HP494350 provides liability coverage to [Appellee]:

---

[1] Specifically, the DiBello complaint states:

8. Subsequently, [Appellee] produced a handgun and fired it at Plaintiff, Anthony DiBello, thereby striking Plaintiff in the abdomen, which caused him to suffer severe, serious and permanent injuries and damages which are described at length below.

\* \* \*

22. This incident resulted, in part, from the intentional acts of [Appellee] and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiff.

DiBello Compl. at ¶¶ 8, 22.

- 2 -

**SECTION II - LIABILITY COVERAGES**

**Page G1**

**Coverage agreements**

**Coverage E - Personal liability**

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at our expense by counsel of our choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

**SECTION II - LIABILITY COVERAGES**

**Page G2**

**Additional liability coverages**

**We** will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

**Claims Expense. We** will pay:

> a) expenses **we** incur and costs levied against an **insured** in a legal action **we** defend, including prejudgment interest on that portion of the award which does not exceed the limit of this coverage.

(Joint Stip., ¶ 9 and Exhibit 2A at pp. G1, G2) (Emphasis in original).

7. The Nationwide homeowners policy 5837HP494350 is subject to the following exclusions:

**SECTION II - LIABILITY EXCLUSIONS**

> 1. Coverage E Personal Liability and Coverage F – Medical Payments to Others do not apply to **bodily injury** or **property damage**:

a) caused by an act intending to cause harm done by or at the direction of any **insured**.

This exclusion does not apply to corporal punishment of pupils.

b) caused by or resulting from an act or omission which is criminal in nature and committed by an **insured**.

This exclusion 1.b) applies regardless of whether the [**i**]**nsured** is actually charged with, or convicted of a crime.

c) arising out of **business** pursuits of an **insured**.

This exclusion 1.c) does not apply to:

(1) activities normally considered non-**business**.

(2) occasional or part time self-employed **business** pursuits of an **insured** under age 19 years old (age 23 if a full-time student).

(3) an office, school, studio, barber or beauty Shop on the **residence premises** if noted on the Declarations.

(4) home care services provided by or at the direction of an **insured** on or from the **residence premises** if noted on the Declarations.

(Joint Stip., ¶ 10 and Exhibit 2A at pp. H1) (Emphasis in original).

8. The Nationwide homeowners policy 5837HP494350 issued to [Appellee] defines an "Occurrence" as relating to an accident as follows:

**SECTION II - LIABILITY COVERAGES**

**Page G1**

"OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated

exposure to the same general condition. The **occurrence** must be during the policy period.

9. Anthony DiBello and his wife sued [Appellee] in the Philadelphia Court of Common Pleas in the matter styled ***Anthony DiBello and Kelly DiBello v. Michael D'Imperio, et al.***, No. 170901836 (the "DiBello Action").

10. Mr. DiBello initiated this action by filing a complaint.

11. In his complaint, Mr. DiBello alleges that [Appellee] accosted him:

Subsequently, after leaving The Lobster Club, Defendant L.O.B.Ster Association's steward, Joseph DeLullo, arrived on the Scene, and, at the same time, Plaintiff, Anthony DiBello, was accosted by Defendant, [Appellee].

(Joint Stip., ¶ 14, Exhibit 2B at ¶ 7).

12. Mr. DiBello also alleges that [Appellee] shot him:

Subsequently, Defendant, [Appellee], produced a [h]andgun and fired it at Plaintiff, Anthony DiBello, thereby striking Plaintiff in the abdomen, which caused him to suffer severe, serious and permanent injuries and damages which are described at length below.

(Joint Stip., ¶ 15, Exhibit 2B at ¶ 8).

13. Further, Mr. DiBello alleges that [Appellee] was acting as an agent of defendant L.O.B.Ster Association at the relevant time.

14. The DiBello Action includes an assault and battery claim against [Appellee].

15. In support of his assault and battery claim, Mr. DiBello alleges that:

The intentional conduct of [Appellee] consists of, but is not limited to the following:

    a. attempting, by violence, to hurt the Plaintiff;

    b. firing a firearm at and striking Plaintiff in his body;

    c. recklessly endangering Plaintiff's life;

    d. acting in a violent manner;

> e. intentionally inflicting harm upon Plaintiff; and
>
> f. such other and further intentional acts that will be developed by future discovery in this case.
>
> (**See** Exhibit 2B at ¶ 23).

16. In support of his assault and battery claim, Mr. DiBello alleges that:

> The negligence and carelessness of [Appellee] consists of, but is not limited to the following:
>
> a. carelessly firing a gun in the vicinity of a crowd of people;
>
> b. creating a trap and/or nuisance and/or dangerous condition; and;
>
> c. failure to properly control a firearm.
>
> (**See** Exhibit 2B at ¶ 26).

17. As a result of his conduct, the Philadelphia Police arrested [Appellee]. He was charged by the Philadelphia District Attorney's Office, but the charges were eventually withdrawn.

Trial Ct. Op. & Verdict, 2/19/20, at 1-6 (footnote and some record citations omitted) (formatting altered).[2]

The trial court entered a decision in favor of Appellee. **Id.** at 10. On March 2, 2020, Appellant timely filed a post-trial motion, requesting judgment notwithstanding the verdict (JNOV). On May 21, 2020, the trial court denied

---

[2] The trial court's opinion and verdict is dated February 12, 2020, but the trial court did not give notice of its verdict to the parties until February 19, 2020. **See** Pa.R.A.P. 108(b); Pa.R.C.P. 236(b).

- 6 -

Appellant's post-trial motion. Appellant filed a notice of appeal on June 16, 2020.[3] Appellant and trial court both complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the trial court err as a matter of law in concluding that the allegations of the . . . DiBello complaint against the Appellee alleged an "occurrence" when the allegations within the DiBello complaint merely pled conclusions of law regarding supposed or alleged negligent or careless conduct?

2. Did the trial court err as a matter of law in concluding that the allegations of the . . . DiBello complaint against Appellee alleged an "occurrence" and further that the facts pled did not implicate the intentional act exclusion contained within the Appellant's homeowners policy issued to Appellee?

3. Did the trial court err as a matter of law by not considering the admissions of record in the joint stipulated facts that Appellee['s] admitted conduct in intentionally shooting Anthony DiBello negated any duty to defend which may have been triggered by the . . . DiBello complaint involving the matter of **Anthony DiBello, et al. vs. Michael D'Imperio, et al.**, No. 170901836 and thus was not an "occurrence" and further implicated the intentional act exclusion in the policy?

4. Did the trial court err as a matter of law in failing to grant Appellant Nationwide's motion for post-trial relief [which requested the trial court give] consideration to evidence outside the DiBello Complaint developed within this declaratory

_____

[3] "An order in a declaratory judgment action that either affirmatively or negatively declares rights, status, and other legal relations is a final order. **See** 42 Pa.C.S.[] § 7532; **see also** Pa.R.A.P. 341(b)(1) (providing that a final order is any order that disposes of all claims and of all parties.)." **Good v. Frankie & Eddie's Hanover Inn, LLP**, 171 A.3d 792, 794 n.1 (Pa. Super. 2017) (formatting altered). Therefore, at the time Appellant filed its notice of appeal, it was timely filed. Nevertheless, on September 1, 2020, this Court entered an order stating that final judgment had not been entered and directing Appellant to *praecipe* the trial court's prothonotary to enter judgment and file a certified copy of the trial court docket reflecting entry of the judgment with this Court. Order, 9/1/20. Appellant complied with this order and a final judgment was entered on September 1, 2020.

> judgment action and submitted to the court within the joint stipulated facts, and establishing that no "occurrence" took place or further that the intentional act exclusion contained within the Nationwide homeowners policy applied?

Appellant's Brief at 5-6 (formatting altered).

Appellant discusses its first two issues collectively in its appellate brief, and we summarize them together.[4] Appellant argues that the trial court erred in concluding that Appellant had a duty to defend Appellee in the DiBello action based on the allegations in the DiBello complaint. *Id.* at 34-46. Appellant observes that under Pennsylvania law, the duty to defend is governed by the allegations of the complaint in the underlying action. *Id.* at 34. Appellant contends that there is no duty to defend when the allegations in the underlying action fall into "a clear and unambiguous exclusion of coverage." *Id.* at 35.

Specifically, Appellant claims that the factual allegations of the DiBello complaint indicate that Appellee acted intentionally by accosting DiBello and firing his gun at DiBello, but artfully pled a claim of negligence to avoid the intentional act exclusion in the Policy. *Id.* at 36-39, 45. Appellant contends

---

[4] Although Appellant presents four distinct questions on appeal, the argument section of Appellant's brief is not divided into separate sections for each question. *See* Pa.R.A.P. 2119(a) (stating "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). We do not condone Appellant's failure to comply with the Rules of Appellate Procedure, but because the noncompliance does not impede our review, we decline to find waiver. *See, e.g.*, *Forrester v. Hanson*, 901 A.2d 548, 551 n.2 (Pa. Super. 2006) (disapproving of the appellant's failure to divide argument into subsections equal to the number of questions raised on appeal but addressing the claims on the merits).

that all of the references to negligence in the DiBello complaint are conclusions of law and not factual allegations. *Id.* at 43-44. Appellant argues that to claim that Appellee aiming his handgun at DiBello and firing a shot was an accident "strains common sense." *Id.* at 46. Appellant concludes that because the DiBello complaint does not plead facts that would constitute an accident, the shooting does not qualify as an "occurrence" as defined in the Policy, and therefore the DiBello complaint does not trigger Appellant's duty to defend under the Policy. *Id.* at 45-46.

Appellee responds that because the DiBello complaint asserted facts that could support a finding that Appellee acted negligently, Appellant had a duty to defend Appellee. Appellee's Brief at 4-7. Specifically, Appellee referred to Count III of the DiBello complaint, which pled a cause of action of negligence against Appellee. *Id.* at 5-6.

This Court has stated that "[w]hen a case is submitted on stipulated facts, the rulings of the trial court are limited to questions of law. Accordingly, our standard of review allows us to evaluate only whether the trial court committed legal error. Our scope of review is plenary." ***Triage, Inc. v. Prime Ins. Syndicate, Inc.***, 887 A.2d 303, 306 (Pa. Super. 2005) (citations omitted); ***see also QBE Ins. Corp. v. Walters***, 148 A.3d 785, 787 (Pa. Super. 2016) (***Walters***) (stating "[t]he proper construction of an insurance policy is resolved as a matter of law in a declaratory judgment action. Thus, as with all questions of law, our scope of review is *de novo* and our standard of review is plenary" (citations omitted)).

This Court has explained:

When an insured who has been sued requests coverage under an insurance policy, the insurer is required to accept all of the allegations contained in the third party's complaint as true and provide a defense if there is a possibility that the injury alleged could fall within the scope of the policy. To determine whether an insurer is obligated to defend and potentially indemnify a party, we review the factual allegations contained in the underlying complaint against the insured. Generally, exclusionary clauses are strictly construed against the insurer and in favor of the insured.

Furthermore, our courts recognize that the duty to defend is broader than the duty to indemnify. The insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. This duty is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent so long as there exists the possibility that the allegations implicate coverage. The duty persists until an insurer can limit the claims such that coverage is impossible.

*Walters*, 148 A.3d at 788 (citations omitted and formatting altered).

Further, we have stated:

In determining whether an insurer's duties are triggered, the factual allegations in the underlying complaint are taken as true and liberally construed in favor of the insured.

The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint. As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover.

The particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint. If we were to allow the manner in which the complainant frames the request for damages to control the

- 10 -

coverage question, we would permit insureds to circumvent exclusions that are clearly part of the policy of insurance. [**Mutual Benefit Ins. Co. v. Haver**, 725 A.2d 743, 745 (Pa. 1999)] ([holding that] allowing the language of the complaint alone to control coverage questions would "encourage litigation through the use of artful pleadings designed to avoid exclusions"). The insured would receive coverage neither party intended and for which the insured was not charged. The fact that the plaintiffs couched their claims in terms of negligence does not control the question of coverage.

**Am. Nat. Prop. & Cas. Companies v. Hearn**, 93 A.3d 880, 884 (Pa. Super. 2014) (**Hearn**) (some citations omitted and formatting altered).

In **Hearn**, the insured sought a declaratory judgment that it did not have a duty to defend the insured where the underlying complaint alleged, among other things, that the insured "came from under [the underlying plaintiff], hitting him in the groin with his forearm while [the underlying plaintiff's] back was turned" and that the insured "intended to cause a harmful or offensive contact with [the underlying plaintiff's] body by striking him . . . ." **Hearn**, 93 A.3d at 882-83, 885 (record citations omitted). The trial court granted the insurer's motion for summary judgment because the Policy excluded bodily injury resulting from intentional acts. **Id.** at 883. The **Hearn** Court concluded that the insurer did not have a duty to defend and emphasized that "[r]egardless of whether [the underlying plaintiffs] chose to plead a negligence cause of action, it is clear from the undisputed facts that [the insured's] assault on [the underlying plaintiff] was intentional." **Id.** at 886; **see also Erie Ins. Exch. v. Fidler**, 808 A.2d 587, 590 (Pa. Super. 2002) (**Fidler**) (stating "[t]he fact that the [underlying plaintiffs] couched their

claims in terms of negligence does not control the question of coverage" and concluding that the underlying complaint's factual allegations described intentional conduct (citations omitted)).

In **Erie Ins. Exchange v. Moore**, 228 A.3d 258 (Pa. 2020) (**Moore**), the underlying plaintiff's complaint alleged that the insured had shot and killed his ex-wife in her home. **Moore**, 228 A.3d at 260, 266. When the underlying plaintiff arrived at the ex-wife's home, the insured pulled the underlying plaintiff into the home, and a struggle ensued. **Id.** During the struggle, the insured "negligently, carelessly, and recklessly caused the weapon to be fired which struck [the underlying plaintiff] in the face" and "other shots were carelessly, negligently and recklessly fired[,]" striking "various parts of the interior of the residence" and the underlying plaintiff. **Id.** (citations omitted). The insured then turned the gun on himself. **Id.** The insurer argued that it did not have a duty to defend the underlying action because the insured's shooting of the underlying plaintiff was intentional, and therefore was not an "occurrence" within the meaning of the policy (*i.e.*, an accident). **Id.** at 263-64.

Our Supreme Court, in **Moore**, concluded the allegations of the underlying complaint were not artful pleadings "designed to present intentional acts as accidental for purposes of insurance coverage." **Id.** at 266. Instead, the Court reasoned that these allegations "taken as true, . . . present a factual scenario that potentially comes within the definition of a covered 'occurrence,' and to which the [insurer's] exclusion for bodily injury 'expected

or intended' by the insured does not apply." ***Id.***; ***see also id.*** at 267 (noting that the "complaint's allegations do not preclude the possibility [the insured] accidentally shot [the underlying plaintiff], despite the fact he intentionally shot [his ex-wife], or intentionally pulled [the underlying plaintiff] into the house before the shooting"); ***Erie Ins. Exchange v. Muff***, 851 A.2d 919, 933 (Pa. Super. 2004) (***Muff***) (holding that while the insurer did not have to defend the insured's intentional acts, it did have "a duty to defend against the specific allegations of negligence contained in the [underlying plaintiff's] complaint, regardless of whether these claims are ultimately determined to be specious" (citation omitted)).

Here, the trial court explained:

Nationwide's Policy covers "**occurrence[s]** resulting from negligent personal acts. . . ." (Joint Stip., ¶ 9 and Exhibit 2A at p. G1) (emphasis in original). The policy further defines "occurrence" as "**bodily injury** . . . resulting from an accident. . . ." ***Id.*** The term "accident" is undefined in the policy, and therefore must be interpreted in its natural, plain and ordinary sense. ***Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 897 (Pa. 2006) [(***Kvaerner***)]. Courts may consult a dictionary to determine a word's ordinary usage. According to Webster's, an "accident" is "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." ***Id.*** (quoting Webster's II New College Dictionary 6 (2001)). The key term in the ordinary definition of "accident" is "unexpected."

In his complaint, Mr. DiBello alleges that he was "accosted by [Appellee]," and that "[Appellee] produced a handgun and fired it at [Mr. DiBello] thereby striking [him] in the abdomen." (Joint Stip., ¶¶ 14-15, Exhibit 2B at ¶¶ 7-8). Mr. DiBello brings a negligence claim against [Appellee], claiming that [Appellee] "carelessly [fired] a gun in the vicinity of a crowd of people," "[created] a trap and/or nuisance and/or dangerous condition;"

and "[failed] to properly control a firearm." (Joint Stip., Exhibit 2 "B" at ¶ 26). Therefore, on the face of the complaint, Mr. DiBello's injury may have been an "occurrence" resulting from [Appellee] accidentally firing a gun, *i.e.*, "failing to properly control a firearm." (Joint Stip., ¶¶ 9, 14-15; Exhibit 2 "B" at ¶ 26). If true, these allegations constitute an "unexpected or undesirable event," and therefore fall within the scope of Nationwide's Policy. (***Id.***)

Trial Ct. Op., 8/12/20, at 7-8 (some citations omitted).

The trial court additionally stated:

The Policy's intentional act exclusion applies to "bodily injury or property damage [. . .] caused by an act intending to cause harm done by or at the direction of any insured." (Joint Stip., ¶ 10 and Exhibit 2A at p. H1). As discussed above, on the face of the complaint, [Appellee's] conduct may have been negligent. Therefore, it is unclear whether the intentional act exclusion applies. Since [Appellant's] duty to defend attaches until it is "clear that the claim has been narrowed to one beyond the terms of the policy," [Appellant] cannot disclaim the duty with the "intentional act" exclusion.

***Id.*** at 10-11 (some citations omitted).

We agree with the trial court's analysis that the factual allegations of the DiBello complaint plead an occurrence as defined in the Policy. The Policy defines an "occurrence" as "bodily injury . . . resulting from an accident . . . ." ***See*** Policy at G1 (emphasis omitted). In the underlying complaint, DiBello alleged that Appellee drew and fired a handgun at DiBello. ***See*** DiBello Compl. at ¶¶ 8, 21-27. The factual allegations of the DiBello complaint, could be read to allege that Appellee intentionally shot DiBello, but in liberally construing the underlying complaint in favor of Appellee as the insured, its factual allegations could also depict an accidental shooting. Accordingly, the factual allegations of the DiBello complaint do not necessarily preclude the possibility that the

shooting was accidental, therefore the trial court did not err in concluding the DiBello pled an "occurrence" as defined in the Policy.

Likewise, we agree with the trial court's conclusion that the Policy's intentional act exclusion does not apply when considering only the DiBello Complaint's factual allegations. According to the Policy's intentional act exclusion, Appellant does not cover "bodily injury . . . caused by an act intending to cause harm done by or at the direction of any insured." *See* Policy at H1 (emphasis omitted). As stated above, the allegations of the underlying complaint are that Appellee drew a handgun and fired it at DiBello. The factual allegations of the underlying complaint, when liberally construed in favor of the insured, do not preclude the possibility that the shooting was accidental. *Compare Moore*, 228 A.3d at 266-67 (the allegations of the complaint were that the insured negligently fired his gun several times during a struggle between the insured and the underlying plaintiff, and that the insured "was screaming, swearing, incoherent, and acting 'crazy,'" did not preclude the possibility that the insured accidentally shot the underlying plaintiff, and the insurer had a duty to defend), *with Hearn*, 93 A.3d at 885-86 (concluding that the allegations of the complaint, which included that the insured came from behind the underlying plaintiff and suddenly struck him in the groin area, described intentional conduct and there was no duty to defend).

As for Appellant's contention that the underlying plaintiff has artfully pleaded the factual allegations of his complaint to avoid coverage exclusions,

we disagree. The courts of this Commonwealth have discussed artful pleading in terms of the causes of action, not the factual allegations of the complaint. *See Hearn*, 93 A.3d at 884 (holding that despite pleading a cause of action for negligence, the underlying complaint alleged intentional acts); *Fidler*, 808 A.2d at 590 (same). Here, the underlying complaint alleges both intentional and negligent conduct. *See* DiBello Compl. at ¶¶ 8, 21-27. Therefore, we do not hold that the factual allegations of the underlying plaintiff complaint constitute artful pleading designed to avoid coverage exclusions. *Cf. Hearn*, 93 A.3d at 886; *Fidler*, 808 A.2d at 590.

This Court has explained that "[a]s long as [the factual allegations of] a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover." *See Hearn*, 93 A.3d at 884 (quoting *Fidler*, 808 A.2d at 590). For these reasons, we hold that trial court did not err in concluding that Appellant has a duty to defend Appellant in the DiBello action until the claims are confined to ones that the Policy does not cover. *See id.*; *Walters*, 148 A.3d at 787; *Triage*, 887 A.2d at 306. Appellant is not entitled to relief on this claim.

In its third issue, Appellant argues that the trial court erred in not considering evidence outside the complaint, specifically, Appellee's deposition and responses to requests for admissions in this matter. Appellant's Brief at 47-61. Appellant contends that this evidence shows that Appellee acted intentionally in shooting DiBello, and therefore, the intentional acts exclusion

in the Policy applies and the claim has been confined to a recovery not covered in the Policy. *Id.* at 47-48, 51-53, 60-61. Appellant cites this Court's decision in *Carrasquillo v. Kelly*, 2720 EDA 2018, 2019 WL 5887293 (Pa. Super. filed Nov. 12, 2019) (unpublished mem.) as an example of when the court may look to facts outside the complaint to conclude that a policy exclusion applied and the insurer had no duty to defend. *Id.* at 54-55. Appellant has also cited a number of federal cases where the federal courts considered extrinsic facts before ruling the insurers had no duty to defend. *Id.* at 55-60 (citing, *inter alia*, *Gardner v. State Farm Fire & Casualty Co.*, 544 F.3d 553 (3d Cir. 2008), and *State Farm Fire & Cas. Co. v. Griffin*, 903 F. Supp. 876 (E.D. Pa. 1995)).

Appellant also essentially argues that it is against public policy to require an insurer to defend a case based upon false and fraudulent claims to verdict without the ability to pursue a declaratory judgment action to resolve the question of coverage. *Id.* at 48-52. Appellant contends that to require the insurer to defend the insured creates a conflict between the attorney hired to defend the insured and the insurer who is responsible for paying the attorney and the verdict. *Id.*

Appellee responds that the trial court properly excluded extrinsic evidence from its consideration in determining whether Appellant had a duty to defend. Appellee's Brief at 7-8.

As noted above, our case law holds that the initial determination of whether an insurer has a duty to defend requires the trial court to examine

the underlying complaint. **See Walters**, 148 A.3d at 788; **Hearn**, 93 A.3d at 884. Recently, our Supreme Court has emphasized that our analysis is limited to the four corners of the complaint and the four corners of the insurance contract. **See Moore**, 228 A.3d at 261 n.2, 265. Further, the Court disapproved of relying on additional facts, such as deposition testimony, in determining whether the insurer has a duty to defend. **See** i**d.** at 261 n.2; **see also Kvaerner**, 908 A.2d at 896 (holding that this Court "erred in looking beyond the allegations raised in [the underlying complaint] to determine whether [the insurer] had a duty to defend").[5]

---

[5] As one treatise explains:

> [A]s a general rule, an insurer's duty to defend the insured is determined primarily by the pleadings in the underlying lawsuit without regard to their veracity, what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim. It is the factual allegations instead of the legal theories alleged that determine the existence of a duty to defend. Even if the allegations are groundless, false, or fraudulent, the insurer is obligated to defend.

14 Couch on Ins. § 200:20. As the treatise explains, jurisdictions differ in how they address the issue of conflicting facts:

> In regard to the existence of coverage, it is possible that the allegations of a complaint lead to one conclusion **while the facts known to the insurer lead to another**. This creates an issue of whether the allegations of the complaint or the known facts are determinative as to the duty to defend.
>
> In jurisdictions that consider only the allegations of the complaint in determining a duty to defend, the allegations in the complaint, alone, determine the insurer's duty to defend without regard to contradictory extrinsic facts. On the other hand, jurisdictions that

*(Footnote Continued Next Page)*

Here, the trial court explained:

> [Appellant] contends that the [trial c]ourt erred by declining to consider evidence outside of the DiBello complaint in determining whether [Appellant] had a duty to defend [Appellee]. Under Pennsylvania law, however, an insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy. Therefore, a court's inquiry into an insurer's duty to defend is strictly limited to the allegations on the face of the complaint. ***Aetna Cas. and Sur. Co. v. Roe***, 650 A.2d 94, 99 (Pa. Super. 1994) ("The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint.")[.] Indeed, "[i]t does not matter if in reality the facts are completely groundless, false, or fraudulent." ***Id.*** The [trial c]ourt therefore could not properly consider evidence outside of the complaint and did not err by confining its analysis to the four corners of the complaint.

Trial Ct. Op. at 7 (some citations omitted and formatting altered).

---

> consider extrinsic facts or evidence in the determination of a duty to defend reflect a difference in opinion with regard to the relative weight of allegations in the complaint and other facts. Under one view, an insurer's duty to defend is not unlimited and ultimately depends upon facts relevant to the suit of which the insurer is aware. These facts must conclusively demonstrate that there is no potential for coverage. If the duty to defend is extinguished pursuant to extrinsic facts, it is extinguished only prospectively and not retroactively. Under a second view, facts outside the pleadings cannot defeat the duty to defend, but they may create it. Under either view, an insurer has a duty to defend its insured in a pending lawsuit where the pleadings do not allege a covered occurrence, but the insurer knows or could reasonably ascertain facts establishing a reasonable possibility of coverage.

***Id.*** § 200:23 (emphasis added). Pennsylvania is a jurisdiction that solely considers the allegations of the complaint. "We do not consider extrinsic evidence" from outside the complaint in construing the allegations raised in the underlying complaint. ***Kiely in re Feinstein v. Phila. Contributionship Ins. Co.***, 206 A.3d 1140, 1146 (Pa. Super. 2019) (citing ***Kvaerner***, 908 A.2d at 896); ***accord*** 14 Couch on Ins. § 200:22 (citing Pennsylvania as a jurisdiction that does not consider extrinsic evidence).

We note that Appellant has cited several federal court decisions applying Pennsylvania law. The decisions of the lower federal courts are not binding on this Court but may be persuasive authority. *See Okeke-Henry v. Southwest Airlines, Co.*, 163 A.3d 1014, 1017 n.4 (Pa. Super. 2017). Several of the federal cases that Appellant cited are not declaratory judgment actions seeking a ruling on whether the insurer has a duty to defend. *See, e.g., Gardner*, 544 F.3d at 557 (plaintiff sued insurer for breach of contract, breach of fiduciary duty, and related claims after insurer declined to defend plaintiff in another action). While in some duty to defend declaratory judgment cases, the federal courts relied on facts outside the complaint, these federal cases are not applicable in light of our Supreme Court's precedent. *Compare Griffin*, 903 F. Supp. at 877-78 (concluding that there was no duty to defend based on the insured's statement that he intended to start a fight with the underlying plaintiffs), *with Moore*, 228 A.3d at 261 n.2, *and Kvaerner*, 908 A.2d at 896.

Appellant's reliance on *Carrasquillo* is also unavailing, because non-precedential decisions of this Court only have persuasive value. *See* Pa.R.A.P. 126(b)(1)-(2); *see also* 210 Pa. Code § 65.37(B). Further, *Carrasquillo* is distinguishable on the facts. The *Carrasquillo* Court concluded that the underlying plaintiff artfully crafted her complaint to avoid the insurance policy's intentional act and criminal act exclusions, by omitting any reference to the insured's conviction for third degree murder. *Id.*, 2019 WL 5887293, at *7-8. The *Carrasquillo* Court relied on the insured's criminal conviction,

which was evidence outside the underlying complaint, to conclude that the insured committed a criminal act, therefore the insurer did not have a duty to defend the underlying action. ***Id.*** at *8. The ***Carrasquillo*** Court did not address the applicability of the policy's intentional act exclusion. ***Id.*** at *8 n.8. Here, Appellant argues the Policy's intentional act exclusion applies based on facts outside the underlying Complaint, therefore ***Carrasquillo*** is not applicable to the facts of this case.[6]

We agree with the trial court that it could not consider evidence outside the complaint. Regardless, our Supreme Court recently reiterated our analysis is limited to the four corners of the complaint and the four corners of the insurance contract, and courts should not rely on additional facts, such as deposition testimony, to determine whether the insurer has a duty to defend. ***See Moore***, 228 A.3d at 261 n.2. ***Moore*** is controlling authority for this Court; therefore, we conclude that the trial court did not err in refusing to consider Appellee's admissions and deposition testimony deciding this declaratory judgment action. ***See Walters***, 148 A.3d at 787; ***Triage***, 887 A.2d at 306.

To the extent Appellant is arguing that we should reverse the trial court's order on public policy grounds, that argument is waived because it has been

---

[6] Further, Appellee was not convicted of a crime. Instead, Appellant argues the trial court should have considered Appellee's deposition and responses to requests for admissions as proof that Appellee intentionally shot DiBello. Even assuming that a criminal conviction is an exception to the ***Moore***'s directive that our consideration is limited to the four corners of the complaint, ***Carrasquillo*** is not applicable to the facts of this case.

- 21 -

raised for the first time on appeal. *See* Pa.R.A.P. 302 (stating "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Even if this argument was not waived, it is meritless because this Court has established that the duty to defend extends to allegations that are fraudulent or false as long as there is the possibility that such allegations implicate policy coverage, and further has rejected public policy arguments to deny a duty to defend where the insurer believes the claims may ultimately be determined as specious. *See Walters*, 148 A.3d at 788; *see also Muff*, 851 A.2d at 933 (rejecting the insurer's public policy argument and stating the insurer had a duty to defend negligence allegations against the insured "regardless of whether these claims are ultimately determined to be specious").

Appellant's fourth issue relates to the denial of its post-trial motion. Appellant's Brief at 6. The issue, as set forth in Appellant's statement of questions presented, relies on the same grounds presented in Appellant's first three issues. *See id.* However, Appellant did not present a separate argument regarding the denial of its post-trial motion. As we have already discussed the grounds Appellant has relied on in support of its first three issues, we do not find waiver. *See* Pa.R.A.P. 2119(a); *Forrester*, 901 A.2d at 551 n.2.

In its post-trial motion, Appellant argued that the trial court erred by not considering Appellee's admission of record, submitted with the joint stipulation of facts, that Appellee intentionally shot Mr. DiBello and there was

no accidental discharge of his weapon. ***See*** Post-Trial Mot., 3/2/20, at 3. Appellant contends that based on the joint stipulation of facts, the terms and conditions of the Policy, the allegations of the DiBello Complaint, no "occurrence" had been alleged within the meaning of the Policy, and the trial court erred in concluding that Appellant had a duty to defend. ***See id.*** at 4.

For the reasons discussed above concluding that the trial court did not err in holding that Appellant has a duty to defend the underlying action, we conclude that the trial court did not err in denying Appellant's post-trial motion.

For these reasons, we determine that the trial court's verdict in favor of Appellee was not erroneous. ***See Walters***, 148 A.3d at 787; ***Triage***, 887 A.2d at 306. Accordingly, we affirm.[7]

Judgment affirmed.

_____

[7] We note that under our case law, Appellant's duty to defend persists until facts are developed in the underlying action that would narrow DiBello's claim to one outside the scope of the Policy. ***See Moore***, 228 A.3d at 265 (stating "to the extent there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the claim is narrowed to one patently outside the policy coverage, for example through discovery" (citations and quotation marks omitted)); ***see also Hearn***, 93 A.3d at 884 (the duty to defend persists "until the claim is confined to a recovery the policy does not cover" (citation omitted)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/13/2021</u>